```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK
          --------------------------------:

          UNITED STATES OF AMERICA,       : Case No.:22-cr-650

                           Plaintiff,     :

                -against-                 :

          JULIAN REBIGA (3),              : New York, New York

          MARTIN MIZRAHI (4),             : January 25, 2023

                           Defendants.    :

          --------------------------------:
```

TRANSCRIPT OF STATUS CONFERENCE HEARING

BEFORE THE HONORABLE SARAH L. CAVE

UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

```
          For Plaintiff:      UNITED STATES ATTORNEY'S OFFICE
                              SOUTHERN DISTRICT OF NEW YORK
                              BY:  Emily S. Deininger, AUSA
                              One St. Andrew's Plaza
                              New York, New York 10007

          For Defendant:      PORTALE RANDAZZO LLP
          Martin Mizrahi      BY:  Richard A. Portale, Esq.
                              Chad Mair, Esq.
                              245 Main Street - Suite 340
                              White Plains, New York 10601

          For Defendant:      Federal Defenders of New York
          Julia Rebiga        BY:  Kristoff I. Williams, Esq.
                              52 Duane Street - 10th Floor
                              New York, New York 10007
```

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

AMM TRANSCRIPTION SERVICE - 631.334.1445

PROCEEDINGS

1           THE DEPUTY CLERK:  Your Honor, this is in

2    the matter of United States versus Julian Rebiga and

3    Martin Mizrahi; 22-cr-650.

4           Counsel, please state your appearance for

5    the record.

6           MS. DEININGER:  Emily Deininger on behalf

7    of the United States.  Good morning, Your Honor.

8           THE COURT:  Good morning.

9           MR. WILLIAMS:  Good morning, Your Honor.

10   Kristoff Williams.  I'll be here from the Federal

11   Defenders of New York, seeking appointment for

12   Mr. Rebiga.

13          THE COURT:  Okay.  Good morning.

14          Good morning, Mr. Rebiga.

15          MR. PORTALE:  Good morning, Your Honor.

16   Richard Portale on behalf of Mr. Mizrahi from

17   Portale Randazzo.

18          THE COURT:  Okay.  Good morning.

19          Good morning, Mr. Mizrahi.

20          DEFENDANT MIZRAHI:  Good morning.

21          MR. MAIR:  Good morning.  Chad Mair, also

22   with Portale Randazzo for Mr. Mizrahi.

23          THE COURT:  Okay.  Good morning.

24          Good morning, sir.  All right.  I'm

25   Magistrate Judge Cave.  Nice to meet you, both.

PROCEEDINGS

1          Ms. Deininger, may I have the date and
2     time of arrest, please.
3          MS. DEININGER:  Defendant Rebiga was
4     arrested on December 8th in the Central District of
5     California and presented that same day in the
6     Central District of California.
7          Defendant Mizrahi was arrested on
8     December 9th and presented that same day in the
9     District of Nevada.
10         THE COURT:  Okay.  Very good.  Thank you.
11         So, gentlemen, again, I'm Magistrate
12    Judge Cave.  And you're here today because you're
13    charged with certain crimes in an indictment.
14         The purpose of today's proceeding is to
15    advise you of certain rights that you have, inform
16    you of the charges against you, consider whether
17    counsel should be appointed, and decide under what
18    conditions, if any, you'll be released -- you should
19    be released pending trial.
20         I'll now explain certain constitutional
21    rights that you have.  You have the right to remain
22    silent.  You're not required to make any statements.
23    Even if you've already made statements to the
24    authorities, you do not need to make any further
25    statements.  Any statements that you do make can be

AMM TRANSCRIPTION SERVICE - 631.334.1445

PROCEEDINGS

1    used against you.

2              You have the right to be released either

3    with or without -- with or without conditions

4    pending trial, unless I find that there are no

5    conditions that would reasonably assure your

6    presence at future court appearances and the safety

7    of the community.

8              If you're not a U.S. citizen, you have

9    the right to request that a government attorney or

10   law enforcement official notify a consular officer

11   from your country of origin that you've been

12   arrested.  In some cases, a treaty or other

13   agreement may require the United States government

14   to give that notice, whether you request it or not.

15             You have the right to be represented by

16   an attorney during all court proceedings, including

17   this one, and during all questioning by the

18   authorities.  You have the right to hire your own

19   attorney.  If you cannot afford an attorney, I will

20   appoint one to represent you.

21             Mr. Rebiga, do you understand your rights

22   as I've just explained them, sir?

23             DEFENDANT REBIGA:  Yes.

24             THE COURT:  Okay.  Thank you.

25             Mr. Mizrahi, do you understand what I've

PROCEEDINGS

1    just explained?

2                  DEFENDANT MIZRAHI:  Yes, Your Honor.

3                  THE COURT:  Okay.  Thank you.

4                  Mr. Rebiga, I understand that you wish

5    for me to appoint counsel.  I do have in front of me

6    a financial affidavit form that you've signed under

7    penalty of perjury.  Please be aware that you can be

8    charged with perjury for any false statements in

9    this affidavit, and you must tell the Court if

10   there's any change to your financial status.

11                  But based on the statements you've made

12   in the financial affidavit, I will approve the

13   appointment of counsel, and so Mr. Williams will

14   represent you going forward, okay.  Thank you.

15                  DEFENDANT REBIGA:  Thank you.

16                  THE COURT:  You can be seated.

17                  So, Mr. Rebiga and Mr. Mizrahi, a grand

18   jury of this district has returned an indictment

19   against you, charging you with certain offenses.

20                  Count 1 of the indictment charges that

21   from April 2021 until June 2021, you and others

22   conspired to commit wire fraud and bank fraud in

23   this district, in violation of 18 U.S.C. §§ 1343 and

24   1344 and 1349.

25                  In Count 2 -- you can take your seat,

PROCEEDINGS

1    sir.  I'm so sorry.

2              In Count 2, the indictment charges that

3    from April 2021 until June 2021 in this district,

4    you and others participated in a scheme to defraud

5    corporations, credit card companies, and other

6    entities through schemes and by making unauthorized

7    credit card charges using stolen credit card

8    information and interstate wires, in violation of

9    18 U.S.C. §§ 1343 and 2.

10             In Count 3, the indictment charges that

11   from April 2021 until June 2021, in this district,

12   you and others participated in a scheme to defraud

13   financial institutions by submitting false

14   information to banks and credit card companies

15   regarding the purpose, intended use and

16   authorizations for wire transfers and credit card

17   charges, and also used interstate wires, in

18   violation of 18 U.S.C. §§ 1344 and 2.

19             In Count 4, from April 2021 until June

20   2021 in this district, you and others knowingly

21   conspired to engage in money laundering of the

22   criminally derived property from the wire and bank

23   fraud conspiracy charged in Count 1 and the wire and

24   bank -- wire fraud and bank fraud charged in

25   Counts 2 and 3, in violation of 18 U.S.C. §§

PROCEEDINGS

1    1956(a)(1)(B)(i) and 1957(a) and 1956.

2              In Count 5, the indictment charges that

3    from May 2021 until June 2021 in this district, you

4    and others transferred the proceeds of your

5    fraudulent schemes to accounts under your control

6    and the control of your co-conspirators and

7    converted the proceeds, in violation of 18 U.S.C. §§

8    1956(a)(1)(B)(i) and 2.

9              And, finally, in Count 6, the indictment

10   charges that from April 2021 until June 2021, in

11   connection with the offenses charged in Counts 1, 2,

12   and 3, you used the identification information of

13   another person to make charges on that person's

14   credit card, in violation of 18 U.S.C. §§ 1028(a)

15   and 2.

16             Mr. Williams, do you have a copy of the

17   indictment, and have you reviewed it with

18   Mr. Rebiga?

19             MR. WILLIAMS:  Yes, Your Honor.

20             THE COURT:  Okay.

21             Same question, Mr. Portale.

22             MR. PORTALE:  Yes, Your Honor, I have.

23             THE COURT:  Okay.  And, Mr. Williams,

24   does your client waive a detailed reading of the

25   indictment?

PROCEEDINGS

1        MR. WILLIAMS:  He does.

2        THE COURT:  And is he prepared to enter a

3  plea today?

4        MR. WILLIAMS:  Not guilty.

5        THE COURT:  Okay.  The Court will enter a

6  plea of not guilty on your behalf.

7        Mr. Portale, does your client waive a

8  detailed reading, and is he prepared to enter a plea

9  today?

10        MR. PORTALE:  Yes, Your Honor.  Not

11  guilty.

12        THE COURT:  Okay.  A not guilty plea will

13  be entered on your behalf as well, Mr. Mizrahi.

14        Ms. Deininger, I direct the prosecution

15  to comply with its obligation under *Brady versus*

16  *Maryland* and its progeny to disclose to the defense

17  all information, whether admissible or not, that is

18  favorable to the defendants, material either to

19  guilt or to punishment and known to the prosecution.

20        Possible consequences for noncompliance

21  may include dismissal of individual charges or the

22  entire case, exclusion of evidence and professional

23  discipline or court sanctions on the responsible

24  attorneys.

25        After this proceeding, I will enter a

AMM TRANSCRIPTION SERVICE - 631.334.1445

PROCEEDINGS

1   written order that more fully describes this

2   obligation and the possible consequences of failing

3   to meet it, and direct the prosecution to review and

4   comply with that order.

5           Does the prosecution confirm that it

6   understands these obligations and will fulfill them?

7           MS. DEININGER:  Yes, Your Honor, we do.

8           THE COURT:  Okay.  Thank you.

9           And what is the government's position as

10  to bail, detention or release?

11          MS. DEININGER:  Your Honor, the

12  government is prepared to propose a bail package for

13  both defendants that is, I believe, generally

14  consistent with both Pretrial recommendations and

15  what was set in the other districts.

16          THE COURT:  Okay.

17          MS. DEININGER:  So with regard to

18  Mr. Mizrahi, the government would propose that he be

19  released on a $500,000 bond to be secured by his

20  residence -- the address, I believe, is

21  1097 Broadmoor Avenue in Las Vegas, Nevada -- and

22  that, otherwise, the terms be set as recommended by

23  Pretrial Services here.

24          So that is, number one, that Pretrial

25  Services supervision as directed; travel restricted

PROCEEDINGS

1   to the Central District of California, the District

2   of Nevada, and the Eastern and Southern District of

3   New York, but that the defendant may travel to other

4   districts for business purposes with pre-approval

5   from Pretrial Services; that he surrender travel

6   documents and not obtain any new ones; no contact

7   with co-defendants or witnesses unless in the

8   presence of counsel; surrender all weapons and

9   firearms, and provide verification of such to

10  Pretrial Services; not possess identifiers or access

11  devices or accounts of others unless they are in his

12  name or that of a minor child; to not liquidate any

13  cryptocurrency without express permission of the

14  Court; to not open any new bank, cryptocurrency or

15  lines of credit accounts without express permission

16  of the Court.

17          And then this last one, recommendation

18  number 9, "Defendant must not receive money or

19  cryptocurrency" -- this says "over 5 million," but

20  my understanding in the prior district was that it

21  was actually meant to be 5,000, and that is what the

22  government would recommend.

23          THE COURT:  Okay.

24          MS. DEININGER:  So to not receive money

25  or cryptocurrency over 5,000 from third parties

PROCEEDINGS

1    except for paychecks or employment compensation

2    received from LV.Net without notifying Pretrial

3    Services.

4              THE COURT:  Okay.  Thank you.

5              Mr. Portale, any comments on that?

6              MR. PORTALE:  Yes, Judge, if I may.

7              THE COURT:  Yeah.

8              MR. PORTALE:  Just a couple things.  I'll

9    just confirm what counsel has stated about the

10   5 million versus 5,000.  I confirm that.

11             THE COURT:  Okay.

12             MR. PORTALE:  Yeah, that was what was

13   agreed.  And I think it was Ms. Deininger and I that

14   had originally agreed on it in the first place over

15   the phone, right?

16             MS. DEININGER:  Yeah.

17             MR. PORTALE:  I do take issue with

18   Pretrial's request that Mr. Mizrahi surrender

19   weapons and firearms.  So the good folks in

20   Las Vegas did not require him to do that.

21             THE COURT:  Okay.

22             MR. PORTALE:  He's got some handguns at

23   the house.  He has a valid Nevada license, concealed

24   carry license, that's valid through 2024.

25             THE COURT:  Okay.

PROCEEDINGS

1          MR. PORTALE:  I don't see any reason to

2     change it.  There's no allegations -- this is not a

3     Hobbs Act robbery, you know.  This is a financial

4     crime allegation.  I don't see any reason to change

5     it.

6          THE COURT:  Okay.  Does -- you said the

7     license is valid.  Do you know if he showed that to

8     the folks in Las Vegas?

9          MR. PORTALE:  He didn't show it to them,

10    but they went and did their homework, and I think

11    it's in the report.

12          THE COURT:  Okay.

13          MR. PORTALE:  And I could find it if

14    you'd like.

15          THE COURT:  Okay.  But they verified that

16    the license is valid?

17          MR. PORTALE:  I read -- I got it from

18    them.

19          THE COURT:  Okay.  Okay.  All right.

20          Do you know where they're stored in the

21    home?  Are they in a locked container?  If you want

22    to ask him --

23          MR. PORTALE:  Of course.  Yeah, yeah,

24    yeah.

25          THE COURT:  Okay.

PROCEEDINGS

1          MR. PORTALE:  But I can find out
2    precisely.
3          THE COURT:  Okay.  Please do.
4          (Discussion held off the record.)
5          MR. PORTALE:  He has a closet that has
6    facial-recognition feature -- security features.
7          THE COURT:  Okay.
8          MR. PORTALE:  The guns are locked in that
9    closet, so, I guess, unless you're Mr. Mizrahi, you
10   can't get in the closet.
11         THE COURT:  Okay.  Thank you.  All right.
12         Ms. Deininger, do you have a reaction to
13   that issue?
14         MS. DEININGER:  Your Honor, I think
15   generally our position is that, while defendants are
16   being supervised, they shouldn't be in possession of
17   firearms because of the risk that it poses to anyone
18   going to conduct a home visit.  So I think we would
19   object to the continued -- continued possession of
20   firearms.
21         THE COURT:  Okay.  Go ahead.
22         MR. PORTALE:  If I could just say one
23   thing --
24         THE COURT:  Sure.
25         MR. PORTALE:  -- and I don't want to be

AMM TRANSCRIPTION SERVICE - 631.334.1445

PROCEEDINGS

1    confrontational, but Counsel didn't object when we

2    set the first docket in which she consented to

3    allowing him to keep his firearms.  This was not an

4    issue before, so I'm not sure what has changed since

5    then.  Nothing's changed.

6              THE COURT:  Okay.

7              MR. PORTALE:  In fact, he's traveled here

8    from Las Vegas.  He's working at our office for the

9    week.  He's -- I don't think there's any -- thank

10   you.

11             THE COURT:  Okay.  Just give me one

12   moment.  If I could just ask Pretrial, is he going

13   to continue to be supervised by the office in

14   Nevada?

15             PRETRIAL SERVICES:  That's correct, Your

16   Honor.

17             THE COURT:  Okay.  And do you know if

18   they've done any visits to the home as yet?

19             PRETRIAL SERVICES:  Not to my knowledge,

20   Your Honor.

21             THE COURT:  Okay.

22             PRETRIAL SERVICES:  But I can try to find

23   out.

24             THE COURT:  Okay.  Do you know if

25   they've --

PROCEEDINGS

```
 1              MR. PORTALE:  Two weeks ago, they did.
 2              THE COURT:  They did do a visit.  Okay.
 3              MR. PORTALE:  Could I have one --
 4              THE COURT:  And was that unannounced, or
 5    did they notify Mr. Mizrahi before they came?
 6              MR. PORTALE:  About 20 minutes before
 7    they arrived, they said --
 8              THE COURT:  Okay.
 9              MR. PORTALE:  -- we're on the way.
10              THE COURT:  Okay.
11              MR. PORTALE:  Yeah.
12              THE COURT:  I'm sorry.  You had something
13    else you wanted to --
14              MR. PORTALE:  I just wanted to add
15    something.  His parents, his elderly parents, live
16    with him.
17              THE COURT:  Yeah.
18              MR. PORTALE:  So, you know, if now
19    everybody knows that he's unarmed and they're in
20    Vegas, and then we're also then exposing his parents
21    to --
22              THE COURT:  No, I understand.  I'm sort
23    of torn between the issue that the government has
24    raised about Pretrial Services officers coming to a
25    home that firearms are present, and the -- their
```

PROCEEDINGS

1   safety, but I also understand Mr. Mizrahi's concerns

2   about his own safety.  And so I'm just trying to

3   think of some compromise that we might make.  I

4   understand that Pretrial sometimes wants to make

5   unannounced visits for obvious reasons, but if there

6   could be some assurance that when they arrive that

7   the firearms were, in fact, locked and stored and

8   not -- you know, that he's not going to walk to the

9   door with, you know, one of the firearms in his

10   hand, for example.

11         MR. PORTALE:  I don't think that's going

12   to be a problem with him.

13         THE COURT:  Okay.

14         MR. PORTALE:  May I?

15         THE COURT:  Go ahead.

16         (Discussion held off the record.)

17         MR. PORTALE:  He just asked me to point

18   out to you that Pretrial Services in Nevada knows

19   about the firearms.  They have no issue with it.

20         THE COURT:  Okay.  Right.

21         MR. PORTALE:  And, I mean, if you would

22   like to place him under oath and have him assure you

23   that when he answers the door for Pretrial, you

24   know, he's not going to be armed, but -- he's happy

25   to do that.  Whatever Your Honor --

PROCEEDINGS

1           THE COURT:  I mean, I'll make it one of
2     the conditions.  And if the folks in Nevada have
3     been comfortable with it so far, they're the ones
4     who have to face this on a daily basis.  If they
5     have any concerns, they can obviously raise it with
6     me and we can change the condition.  But given that
7     they've been operating on the status quo, I'm
8     comfortable with leaving it as is, so --
9           MR. PORTALE:  Thank you very much, Your
10    Honor.
11          THE COURT:  Okay.  All right.  So I will
12    not require Mr. Mizrahi to surrender the firearms
13    that he has in the home, provided that they do
14    remain locked, and that on any visit from Pretrial
15    Services, they also all remain in the locked storage
16    cabinet.  All right.
17          So, Mr. Mizrahi, I know the government
18    just read the conditions, but I'll just repeat them
19    again for the record; that I'm comfortable, based on
20    my review of the indictment, the Pretrial Services
21    reports that I have in our discussion here today,
22    that you'll be released on the following conditions:
23          You'll need to sign a personal
24    recognizance bond in the amount of $500,000 secured
25    by your residence in Nevada.  You'll be subject to

PROCEEDINGS

1    Pretrial Services supervision as directed.  Your
2    travel will be restricted to the Central District of
3    California, the District of Nevada, Eastern and
4    Southern Districts of New York.  You may travel to
5    other districts for business purposes with
6    pre-approval from Pretrial.  You must surrender any
7    travel documents and not obtain any new travel
8    documents.  You may not have any contact with your
9    co-defendant or witnesses unless in the presence of
10   counsel.
11            I'm -- as I said, I'm not going to ask
12   you to surrender the firearms, but they must remain
13   in a locked cabinet.  And they -- in particular,
14   they must be in a locked cabinet on the arrival of
15   Pretrial Services to your home.  You may not possess
16   any identifiers, access devices or accounts unless
17   in your name or that of your minor child.  You may
18   not liquidate any cryptocurrency without Court
19   permission.  You may not open any new bank,
20   cryptocurrency, or line-of-credit accounts without
21   permission of the Court.  And you may not receive
22   any money or cryptocurrency over $5,000 from third
23   parties except for paychecks, employment
24   compensation received from LV.Net without notifying
25   Pretrial Services.

PROCEEDINGS

1                    Do you understand all those conditions
2        I've just read, Mr. Mizrahi?
3                    DEFENDANT MIZRAHI:  Yes, Your Honor.
4                    THE COURT:  Okay.  Thank you.  Okay.
5                    Now, let's talk about Mr. Rebiga.
6                    MR. PORTALE:  Wait.
7                    THE COURT:  Oh, I'm sorry.
8                    MR. PORTALE:  I'm so sorry.
9                    THE COURT:  It's okay.
10                   MR. PORTALE:  Before we move on, I'm not
11       going to ask Your Honor to change or alter anything,
12       but could I just address something in the addendum
13       from Pretrial?
14                   THE COURT:  Yeah.
15                   MR. PORTALE:  I just want the record to
16       be clear.  On page 2 of Mr. Mizrahi's addendum, it's
17       kind of unclear as to whether they're saying --
18       he's -- so one of the conditions that we had agreed
19       upon was that he not open any new bank accounts, and
20       so, you know, it's a condition, and it's important,
21       right?  So I've been discussing with AUSA Klein that
22       his -- he's been encountering lots of problems.
23       He's now been indicted for wire fraud and bank
24       fraud, so banks are shutting him down.
25                   THE COURT:  Right.


                 AMM TRANSCRIPTION SERVICE - 631.334.1445

PROCEEDINGS

1            MR. PORTALE:  So he has been scrambling
2    to stay in business.  He has not opened a new bank
3    account.
4            THE COURT:  Okay.
5            MR. PORTALE:  And so under financial
6    resources, it's a little unclear as to whether he
7    said that the bank accounts were new.  And I was on
8    the phone with Pretrial during that telephonic
9    interview, as was Mr. Mair and Mr. Mizrahi, and what
10   he said was that they were newer to him, so, like,
11   they were kind of new, but not new since --
12           THE COURT:  Not since the case.
13           MR. PORTALE:  -- the conditions.
14           THE COURT:  Okay.
15           MR. PORTALE:  And I wanted to just
16   clarify that so Your Honor knows he has not violated
17   these conditions.
18           THE COURT:  Okay.  I understand.  I
19   didn't read it that way, but I understand the
20   clarification.
21           MR. PORTALE:  Thank you.
22           THE COURT:  Okay.  All right.  Obviously,
23   he can just -- if he needs to do something
24   different, he just needs to tell Pretrial.  So it's
25   not an absolute restriction.  It's just --

PROCEEDINGS

1            MR. PORTALE:  Okay.

2            THE COURT:  -- that if he's going to do

3    it, he needs to get -- sorry -- he needs to get

4    Court permission.

5            MR. PORTALE:  This is Court permission.

6    The old condition was Pretrial permission.

7            MS. DEININGER:  Your Honor, the

8    government would be fine with Pretrial --

9            THE COURT:  Pretrial?

10           MS. DEININGER:  -- permission.

11           MR. PORTALE:  Pretrial?  Okay.  Because

12   then the lawyers don't have to get together and come

13   to the Court and --

14           THE COURT:  That's fine.  So I will

15   change it to Pretrial.

16           MR. PORTALE:  Okay.  And just so you

17   know, I called Mr. Klein and I explained to him, you

18   know, what was going on.  And just so everybody --

19   and we sent all the information to Pretrial as well.

20           THE COURT:  Okay.

21           MR. PORTALE:  Mr. Mizrahi did.

22           THE COURT:  I appreciate that.  Thank you

23   for your candor.  And the record -- this is being

24   recorded, so the record reflects the correction that

25   you made.

PROCEEDINGS

1                    MR. PORTALE:  Thank you.

2                    THE COURT:  And also, I will -- when I

3     enter all the conditions on the disposition sheet, I

4     will note that it's Pretrial permission, not Court

5     permission that's required.

6                    MR. PORTALE:  Thank you.

7                    THE COURT:  Okay.  All right.

8                    Ms. Deininger, let's talk about Mr.

9     Rebiga.

10                    MS. DEININGER:  For Defendant Rebiga,

11    again, the government would propose the bond package

12    with conditions that I think generally reflects what

13    was set before.  And I believe it will be acceptable

14    to defense counsel, but we would propose that the

15    defendant be released on a $75,000 bond to be

16    secured by his residence.  And that address, I

17    believe, is 92 -- sorry -- 902 Firmona Avenue in

18    Redondo Beach, California.  He had previously been

19    subject to home detention with location monitoring.

20    I have confirmed with defense counsel, and we have

21    agreed to reduce that to standalone location

22    monitoring.

23                    THE COURT:  Okay.

24                    MS. DEININGER:  And, otherwise,

25    conditions consistent with those proposed by

PROCEEDINGS

1    Pretrial here, so report to Pretrial Services as
2    directed; surrender all passports and make no new
3    applications; travel restricted to the Southern and
4    Eastern Districts of New York and the Central
5    District of California and points in between for
6    travel to and from court and attorney visits; that
7    he seek and maintain verifiable employment; no
8    contact with victims or witnesses except in the
9    presence of counsel; no possessing personal
10   identifying information of others; no opening new
11   bank accounts or cryptocurrency accounts unless
12   approved by Pretrial; reside at a location approved
13   by Pretrial, and do not relocate without Pretrial
14   Services' permission; and maintain and obtain
15   employment as approved by Pretrial Services.
16              THE COURT:  Okay.  Thank you.
17              All right, Mr. Williams, any comments or
18   clarifications?
19              MR. WILLIAMS:  We're in agreement with
20   that, Your Honor.  I think one of the other
21   conditions we talked about removing from the
22   previous set conditions was the digital device
23   monitoring, so I just wanted to make that clear.
24              THE COURT:  Okay.
25              MR. WILLIAMS:  And as far as the $75,000

PROCEEDINGS

1    bond, that was already submitted in the Central

2    District of California.  It's been approved by that

3    office.  Just wanted to get clarification if we are

4    being asked to submit that again here.

5            THE COURT:  Okay.  I think it is a new

6    bond, usually, that we have people sign here,

7    correct?

8            MS. DEININGER:  That's correct.  My

9    understanding is it's -- the old one will be --

10   is -- is essentially released once an appearance

11   occurs in this district.

12           THE COURT:  Right.

13           MR. WILLIAMS:  Okay.

14           THE COURT:  Right.  So just -- it's a new

15   bond that has to be signed, but it replaces the old

16   one, so -- all right.

17           So, just to repeat -- I know, Mr. Rebiga,

18   you just heard this from Ms. Deininger -- it's okay.

19   You can remain seated.  I really -- I appreciate the

20   respect, thank you, but I don't want you to have to

21   keep getting up.

22           So you'll be released on the following

23   conditions:  You must post a new bond in this

24   district or sign a new bond in this district in the

25   amount of $75,000 secured by your residence in

PROCEEDINGS

1    Redondo Beach, California.  You must report to

2    Pretrial Services as directed.  You must surrender

3    any passport and make no new applications for any

4    travel documents.  Your travel is restricted to the

5    Southern and Eastern Districts of New York and the

6    Central District of California and points between

7    for travel to and from court and attorney visits.

8              You must seek and maintain verifiable

9    employment.  You may not have any contact with

10   victims or witnesses except in the presence of

11   counsel.  You may not possess others' personally

12   identifying information.  You may not open any new

13   bank accounts or cryptocurrency accounts unless

14   approved by Pretrial Services.  And you must reside

15   at a location approved by Pretrial Services and not

16   relocate without permission of Pretrial Services.

17   And we will modify -- you'll remain on home

18   detention enforced by location monitoring, but we'll

19   switch it to the standalone monitoring equipment.

20             Do you understand all those conditions,

21   Mr. Rebiga?

22             DEFENDANT REBIGA:  Yes, Your Honor.

23             THE COURT:  Okay.  Thank you.

24             Let me just explain to both of you, given

25   the conditions that I've set for each of you

PROCEEDINGS

1    separately, if you fail to appear in court as
2    required, or if you violate any of the conditions of
3    your release, a warrant will be issued for your
4    arrest.  You and anyone who signed the bond will
5    each be responsible for paying the full amount.  In
6    the case of Mr. Mizrahi, that's $500,000.  In the
7    case of Mr. Rebiga, that's $75,000.  And you may be
8    charged with a separate crime of bail jumping, which
9    can mean additional jail time and/or fine.
10          If you commit a new offense while you're
11   released, in addition to the sentence for that
12   offense, you'll be sentenced to an additional term
13   of imprisonment of not more than ten years if the
14   offense is a felony, or not more than one year if
15   the offense is a misdemeanor.  And that term is
16   executed after any other sentence is completed.
17          While you're awaiting trial, I must warn
18   you not to have any contact with or engage in any
19   intimidation of potential or designated witnesses or
20   jurors, not to engage in any intimidation of any
21   court officer, and not to engage in any conduct that
22   would obstruct an investigation by law enforcement.
23   And if you don't agree with the conditions I've set,
24   you do have the right to appeal them.
25          Has Judge Oetken set a conference date in

PROCEEDINGS

1   the case?

2              MS. DEININGER:  Yes, Your Honor.  We have

3   an initial pretrial conference scheduled for

4   tomorrow at 11:00 a.m.

5              THE COURT:  Okay.  All right.  Very good.

6              Anything further from the government

7   today, then?

8              MS. DEININGER:  No, Your Honor.

9              THE COURT:  Okay.  Mr. Williams?

10             MR. WILLIAMS:  No, Your Honor.  Thank

11  you.

12             THE COURT:  Okay.  Mr. Portale?

13             MR. PORTALE:  No, Your Honor.

14             THE COURT:  Okay.  Thank you.

15             Thank you very much, Mr. Rebiga and

16  Mr. Mizrahi, for your cooperation.  And we'll be

17  adjourned.  Have a good day.

18

19                            0o0

20

21

22

23

24

25

1

2                        C E R T I F I C A T E

3

4        I, Adrienne M. Mignano, certify that the

5    foregoing transcript of proceedings in the case of

6    USA v. Zubaid, et al., Docket #22CR0650 was

7    prepared using digital transcription software and is

8    a true and accurate record of the proceedings.

9

10

11   Signature   *Adrienne M. Mignano*
                 _____

12                    ADRIENNE M. MIGNANO, RPR

13

14   Date:      June 14, 2023

15

16

17

18

19

20

21

22

23

24

25