**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| United States of America, | : |
| | : |
| v. | : |
| | : |
| JOEL ZUBAID, | : |
| | : |
| DAVID GORAN, | : |
| | : |
| JULIAN REBIGA, | : |
| a/k/a "Iulian Rebiga", and | : |
| | : |
| MARTIN MIZRAHI, | : |
| a/k/a "Marty Mizrahi" | : |
| | : |
| Defendants. | : |

**Case No.:**

1:22-cr-00650-JPO

---

# MEMORANDUM OF LAW IN SUPPORT OF PRETRIAL MOTIONS ON BEHALF OF MARTIN MIZRAHI

# Table of Contents

**PRELIMINARY STATEMENT** ................................................................................................... 1

**FACTUAL BACKGROUND** ...................................................................................................... 1

**POINT I:** *COUNT* **6 OF THE INDICTMENT SHOULD BE DISMISSED** ........................................ 4

    A.    18 U.S.C. § 1028A is Unconstitutionally Vague ................................................... 4

    B.    *Count* **6 Fails to State an Offense** ............................................................................ 6

**POINT II: THE GOVERNMENT SHOULD PROVIDE FURTHER DISCOVERY IN A MANNER THAT WILL ENABLE ITS EFFECTIVE USE AT TRIAL** ............................................................... 8

**POINT III: THE GOVERNMENT SHOULD PRESERVE THE ROUGH NOTES OF ITS AGENTS** ................................................................................................................................ 10

**POINT IV: THE GOVERNMENT SHOULD PROVIDE DISCLOSURE OF RULE 404(b) EVIDENCE** ............................................................................................................................ 10

**POINT V: THE GOVERNMENT SHOULD BE DIRECTED TO PROVIDE A BILL OF PARTICULARS** ..................................................................................................................... 10

**POINT VI: THE DOCUMENTATION ON BOND CONDITIONS FOR MR. MIZRAHI SHOULD BE CORRECTED TO REFLECT THE COURT'S ORDER** ............................................ 12

**POINT VII: THE DEFENSE SHOULD BE PERMITTED TO MAKE FURTHER MOTIONS BEFORE TRIAL** ................................................................................................................... 13

**CONCLUSION** ........................................................................................................................ 13

## PRELIMINARY STATEMENT

Mr. Mizrahi moves to dismiss *Count* 6 of the Indictment under Federal Rule of Criminal Procedure 12(b)(3) because it is unconstitutionally vague and fails to state an offense. Mr. Mizrahi further moves for an order for a bill of particulars and the production of additional discovery. Mr. Mizrahi also moves the Court to correct the bond conditions to remove the condition requiring Mr. Mizrahi continue or seek employment.

## FACTUAL BACKGROUND

On December 2, 2022, an Indictment was filed in the Southern District of New York against the four defendants named in the above caption (Dkt. 2). The Indictment charged all four defendants with six counts: *Count 1*: Conspiracy to Commit Wire Fraud and Bank Fraud, 18 U.S.C. § 1349; *Count 2*: Wire Fraud, 18 U.S.C. § 1343 and 2; *Count 3*: Bank Fraud, 18 U.S.C. § 1344 and 2; *Count 4*: Conspiracy to Commit Money Laundering, 18 U.S.C. § 1956(h); *Count 5*: Money Laundering, 18 U.S.C. § 19565(a)(1)(b)(i) and 2; and *Count 6*: Aggravated Identity Theft, 18 U.S.C. § 1028A and 2.

Mr. Mizrahi surrendered to authorities in Las Vegas, Nevada, on December 9, 2022, and made an initial appearance in District of Nevada court on the same date (Criminal Docket 2:22-mj-00950-NJK). He was released with conditions including, *inter alia*, a bond of $500,000 secured by Mr. Mizrahi's home and travel limited to the Southern District of New York, the Central District of California (for business), and the State of Nevada (*see*, Exhibit A, attached).

The case was thereafter transferred to the Southern District of New York pursuant to *Fed. R. Crim. P.* 5(c)(3) and Mr. Mizrahi appeared before a magistrate judge in that court on January 25, 2023. Mr. Mizrahi pled not guilty to all counts. The government proposed a bail package "generally consistent with both Pretrial recommendations and what was set in the other districts"

(*see*, Exhibit B, attached, Transcript of January 25, 2023, p. 9). The government read into the court record a list of conditions that mirrored Mr. Mizrahi's conditions of release from the District of Nevada court. (*Id*., pp. 9-11). The Court then read the conditions agreed upon between the parties and imposed by the Court (*Id*., pp. 17-29; the Court indicated that Mr. Mizrahi required Court permission to open a new bank or line-of-credit account, but after a brief discussion it was clarified that Pretrial permission was required, pp. 19-21). On both the bond conditions (Dkt. 30, attached here as Exhibit C) and Order Setting Conditions of Release (Dkt. 33, attached here as Exhibit D), a box was checked that required Mr. Mizrahi to continue to seek employment. This appears to be in error, and Mr. Mizrahi addresses it below in Point VI.

    The Indictment alleges that the four defendants, along with individuals known and unknown, conspired and participated in two "business email compromise" schemes and one credit card fraud scheme (*see*, Indictment, *Count* 1). In the first business email compromise scheme, the government alleges that unnamed co-conspirators, after obtaining access to the business email account of a corporation, sent instructions for a series of bank wires resulting in $3,488,000 being sent from the victim business's bank accounts. Approximately $1,570,000 of the proceeds were allegedly deposited into an account owned and controlled by defendants Zubaid and Goran, and that Zubaid and Goran sent funds to Mr. Mizrahi in exchange for Bitcoin. Mr. Mizrahi denies knowledge of the alleged acts listed in the Indictment pertaining to that scheme (Indictment, paras. 5-9).

  The second business email compromise scheme (*see*, Indictment, *Count* 1), which allegedly followed the same protocol as the first scheme, involved unnamed co-conspirators obtaining access to the business email account of an individual and using that access to send wires instructions for funds to be transferred. Mr. Mizrahi is not alleged to have played any role in the

scheme and he denies any knowledge of the alleged acts listed in the Indictment pertaining to that scheme (Indictment, paras. 10-13).

For the credit card fraud scheme (*see*, Indictment, *Count* 1), the Indictment alleges that the defendants, along with others known and unknown, conducted a series of credit card charges without the consent of the cardholders. To Mr. Mizrahi's knowledge, all alleged charges were either reversed by the bank or refunded by Mr. Mizrahi in the months subsequent to the charges.

Mr. Mizrahi met defendant Zubaid several years ago and they struck a friendship. Over time, they discussed various business opportunities, including cryptocurrency transactions. They would sometimes socialize together and would introduce potential business associates to one another. Mr. Mizrahi developed a trust in Zubaid, who presented himself as a legitimate and honest entrepreneur. Mr. Mizrahi is a successful businessman who would not knowingly engage in activities that would jeopardize the business he has built over the years.

Mr. Mizrahi denies all allegations in the Indictment. To the extent any of transactions took place as alleged in the business email schemes, Mr. Mizrahi had no knowledge that the funds were illicit in any way. To the extent any credit card charges were conducted through point-of-sale machines controlled by Mr. Mizrahi as alleged in the Indictment, Mr. Mizrahi believed them to be legitimate charges. As is clear from the Indictment, unnamed and unindicted individuals were the driving force behind all of the alleged schemes. Mr. Mizrahi, to the extent he was involved in a limited capacity, was an unwitting victim of the nefarious plans of co-defendants Zubaid and Goran, and others unnamed and unindicted.

The government has made a series of discovery productions, totaling several terabytes of information. Counsel for Mr. Mizrahi made further inquiries via email on May 24, 2023, and June 1, 2023, and the Government responded on June 5, 2023. Counsel for Mr. Mizrahi and the

Government met to discuss discovery matters on May 24, 2023. Counsel for Mr. Mizrahi sent a formal discovery demand letter on June 6, 2023, requesting *inter alia* early disclosure of materials pursuant to 18 U.S.C. § 3500,[1] information related to cooperating witnesses or confidential informants, witness lists, recordings of proffer sessions, and discovery related to other individuals ostensibly related to the case. The Government responded on June 13, 2023, indicating that it would not provide any of the requested materials at that time.

## **POINT I: *COUNT* 6 OF THE INDICTMENT SHOULD BE DISMISSED**

### A.    18 U.S.C. § 1028A is Unconstitutionally Vague

Mr. Mizrahi moves to dismiss *Count* 6 of the Indictment as the code provision cited as the basis for the count, 18 U.S.C. § 1028A, is unconstitutionally vague as applied to this case.

A statute is void on vagueness grounds when the statute either "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or "authorizes or even encourages arbitrary and discriminatory enforcement" (*Hill v. Colorado*, 530 U.S. 703 [2000]; *Kolender v. Lawson*, 461 U.S. 352 [1983]).The Second Circuit elaborates that whether a statute is unconstitutionally vague is an "objective" inquiry in which it must be determined "whether the law presents an ordinary person with sufficient notice of or the opportunity to understand what conduct is prohibited or proscribed, not whether a particular plaintiff actually received a warning that alerted him or her to the danger of being held to account for the behavior in question" (*Dickerson v. Napolitano*, 604 F.3d 732, 745-46 [2d Cir. 2010]). What renders a statute vague is not the possibility that it will sometimes be difficult to determine

---

[1] *See*, Memorandum from David W. Ogden, Deputy Att'y Gen., Dep't of Justice, Guidance for Prosecutors Regarding Criminal Discovery (Jan. 4, 2010), https://www.justice.gov/archives/dag/memorandumdepartment-prosecutors.

whether the incriminating fact it established has been proved, but rather the indeterminacy of precisely what that fact is (*United States v. Williams*, 553 U.S. 285, 306 [2008]). Arbitrary enforcement is the most important aspect of the vagueness doctrine (*Kolender*, 461 U.S. at 538).

Section 1028A imposes a mandatory sentence of two years incarceration when a defendant "knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person" during the commission of a number of predicate offenses (including, as relevant here, bank and wire fraud, and conspiracy to commit the same; *see*, Indictment, para. 30).

Justice Gorsuch's concurring opinion in the recently decided Supreme Court case *Dubin v. United States* (216 L. Ed. 136, 143 S. Ct. 1557 [2023]) persuasively demonstrates that § 1028A is unconstitutionally vague. Justice Gorsuch joined in the majority's decision to vacate the conviction, but also addressed the "more fundamental problem" with § 1028A that it "fails to provide even rudimentary notice of what it does and does not criminalize" (*Dubin*, 216 L. Ed. at 156).

The Court held that § 1028A(a)(1) is "violated when the defendant's misuse of another person's means of identification is at the crux of what makes the underlying offense criminal, rather than merely an ancillary feature of a billing method" (*Dubin*, 216 L. Ed. at 144). With fraud or deceit crimes, "the means of identification specifically must be used in a manner that is fraudulent or deceptive" (*Id.*, at 155). The "crux of the criminality" requires more than a "causal relationship" (*Id.*).

As Justice Gorsuch emphasized, however, the formulations set forth by the court "present intractable interpretive challenges of their own" (*Id.*, at 157). "Under the Court's 'crux' test, no boundary separates conduct that gives rise to liability from conduct that does not" (*Id.*, at 159). Thus, "§ 1028A(a)(1) is not just an 'ambiguous' statute—'one that *does* define prohibited conduct

with some precision, but [that] is subject to two or more different interpretations'"), but is instead a vague statute—one that "does not satisfactorily define the proscribed conduct" at all. (*Id.*, at 160, *quoting*, J. Decker, Addressing Vagueness, Ambiguity, and Other Uncertainty in American Criminal Laws, 80 Denver U. L. Rev. 241, 260-261 [2002] (emphasis added by the Court)).

Ultimately, the broad language in § 1028A(a)(1) that one cannot knowingly transfer, possess, or use, without lawful authority, a means of identification of another person during the commission of a number of predicate offenses fails to provide sufficient notice of or the opportunity to understand what conduct is prohibited or proscribed (*Dickerson*, 604 F.3d at 745-46). It is entirely unclear when a "means of identification" is used in a way that it is at the "crux" of the offense. *Count* 6 should be dismissed.

### B. *Count* 6 Fails to State an Offense

In the event this Honorable Court decides that 18 U.S.C. § 1028A is not unconstitutionally vague, *Count* 6 should still be dismissed for failing to state an offense, pursuant to Federal Criminal Procedure Rule 12(b)(3) and the Supreme Court of the United States' recent ruling in *Dubin v. United States* (216 L. Ed. 136, 143 S. Ct. 1557 [2023]). In *Dubin*, the Supreme Court vacated the defendant's conviction under § 1028A, rejecting the government's overly broad interpretation of the statute.

Applied to the charges here, the *Dubin* analysis shows that the government has indeed overcharged. Section 1028A does not apply to the conduct charged and *Count* 6 should be dismissed. *Count* 6 refers to *Count* 1 (Conspiracy to Commit Wire Fraud and Bank Fraud, 18 U.S.C. § 1349), *Count* 2 (Wire Fraud, 18 U.S.C. § 1343 and 2), and *Count* 3 (Bank Fraud, 18 U.S.C. § 1344 and 2) as the underlying predicate offenses. *Count* 6 alleges that in or about May 2021, an unnamed co-conspirator sent co-defendant Zubaid pictures of a driver's license and credit

card of a third party (an unnamed "Victim-1"), which Zubaid then sent to Rebiga, Goran, and Mizrahi. *Count* 6 further alleges that Goran sent back an authorization form signed in the victim's name and that Rebiga and Mizrahi made charges on Victim-1's card. Through these allegations, *Count* 6 refers only to the alleged credit card scheme, not to either of the alleged business email compromise schemes.

To satisfy the elements of Wire Fraud, the government must prove that a defendant engaged in a scheme to defraud, money or property as the object of the scheme, and used wires to further the scheme (*United States v. Gatto*, 986 F.3d 104, 113 [2d Cir. 2021]). A "scheme to defraud" requires proof that the defendant possessed a fraudulent intent and intended to harm their victim or contemplate that their victim may be harmed (*United States v. D'Amato*, 39 F.3d 1249, 1257 [2d Cir. 1994]).

Bank Fraud involves a scheme or artifice to defraud a financial institution or to obtain moneys, funds, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises (18 U.S.C. § 1344). The government must prove that a defendant engaged in deception by making material misrepresentations and that through the scheme, a defendant intended to victimize the bank by exposing it to loss (*Neder v. United States*, 527 U.S. 1, 20-25 [1999]; *Loughrin v. United States*, 573 U.S. 351, 356-357 [2014]).

The conspiracy charged in *Count* 1 alleges that the co-defendants, along with others known and unknown, combined, conspired, confederated, and agreed to commit wire fraud and bank fraud.

Mr. Mizrahi is alleged to have received credit cards and identification cards of individuals, and subsequently charged those cards without the consent of the cardholders. While Zubaid

7

received and forwarded pictures of the identification cards of the credit card holders, there is no indication that they were required for any purpose in the scheme as alleged. Nothing in the allegations by the government or the discovery provided to the defense indicates a requirement by the banks or credit card companies to produce identification cards, either at the time of charging or subsequently.

As applied, the misuse of another person's means of identification at the crux of what makes the underlying offense criminal (*Dubin*, 216 L. Ed. at 144). The scheme to defraud (Wire Fraud) or false pretenses (Bank Fraud) do not require the misappropriation of one's identity. In this regard, the possession of a photograph of another's identification card is "ancillary" at best to the crux of the crime (*Id*., at 146). Even if the allegations were proved, the "means of identification itself" was not used to defraud or deceive (*Id*., at 150).

For these reasons, *Count* 6 charging a violation of § 1028A fails to state an offense and must be dismissed.

### POINT II: THE GOVERNMENT SHOULD PROVIDE FURTHER DISCOVERY IN A MANNER THAT WILL ENABLE ITS EFFECTIVE USE AT TRIAL

In the June 6, 2023, discovery demand letter to the Government, counsel for Mr. Mizrahi requested that the Government provide all discovery materials that he is entitled to under Rule 16 of the Federal Rules of Criminal Procedure and the laws and Constitution of the United States. Counsel also requested disclosure of any exculpatory evidence falling within the definition set forth by *Brady v. Maryland* (373 U.S. 83 [1963]), the early disclosure of any material falling under 18 U.S.C. § 3500 ("Jencks Act"), the early disclosure of the names and witnesses of all witnesses the government intends to call at trial and the evidence it intends to use at trial, and the disclosure of relevant statements of government witnesses that it does not intent to call at trial.

Mr. Mizrahi requests the Court to direct the government to disclose any *Brady* or *Giglio* materials by a date that will enable him to make effective use of the materials at trial.

Mr. Mizrahi also requests the Court to direct the government to provide to the Court any "favorable" information which the government determines is not "material" within the meaning of *United States v. Coppa* (267 F.3d 132 [2d Cir 2001]). In *Coppa*, the Second Circuit held that it is for the prosecutor to make the predictive determination of whether exculpatory or impeaching evidence rises to the level of "materiality", and thus, it is for the prosecutor to determine if and when such evidence is to be disclosed to the defendant (*Id*, at 142). However, a district court judge has the discretion "to order pretrial disclosures as a matter of case management" (*Id*, at 146). Mr. Mizrahi requests that to the extent that the government has determined that information is favorable to the accused but is not "material", the government provide the favorable information with the Court so that it may assess the government's determination of non-materiality.

Mr. Mizrahi requests the Court to direct the government to provide exhibit and witness lists by a date that will enable him to make effective use of the materials at trial. This is of crucial importance in light of the substantial amount of discovery provided thus far.

Mr. Mizrahi requests the Court to direct the government to produce the written statements of individuals that it will not be calling as witnesses during trial. If the government is in possession of such statements, the statements are discoverable under *Fed. R. Crim. P. 16(a)(1)*.

## POINT III: THE GOVERNMENT SHOULD PRESERVE THE ROUGH NOTES OF ITS AGENTS

Mr. Mizrahi requests the Court to direct the government to preserve for trial the rough notes made by agents during witness interviews. [2]

## POINT IV: THE GOVERNMENT SHOULD PROVIDE DISCLOSURE OF RULE 404(b) EVIDENCE

In the June 6, 2023, discovery demand letter to the Government, counsel for Mr. Mizrahi requested the government disclose evidence of other crimes, wrongs, or prior bad acts allegedly committed by him, which the government intends to introduce at trial for any purpose. The government responded that it would produce such Rule 404(b) materials in accordance with the pre-trial practices of this district or any pre-trial schedule set by the Court. Mr. Mizrahi requests the Court to require the government to disclose any evidence it intends to offer under Rule 404(b) at least sixty days before trial.

## POINT V: THE GOVERNMENT SHOULD BE DIRECTED TO PROVIDE A BILL OF PARTICULARS

The Indictment charged that Mr. Mizrahi was part of a conspiracy to "defraud corporations, banks, credit card companies, and other entities, and to launder the fraud proceeds received from those victims" (Indictment, para. 1). As noted above, the primary actors in the crimes alleged were unnamed and unindicted individuals. The Indictment alleges that these unnamed and unindicted individuals were responsible for obtaining access to individuals email accounts, facilitating the wire transactions from the financial institutions, and providing the identification cards and credit

---

[2] *See*, Memorandum from David W. Ogden, Deputy Att'y Gen., Dep't of Justice, Guidance for Prosecutors Regarding Criminal Discovery (Jan. 4, 2010), https://www.justice.gov/archives/dag/memorandumdepartment-Prosecutors, section 8.

cards to be charged. The Indictment does not explain, however, how the governments intends to prove Mr. Mizrahi knew the unlawful nature of the actions to obtain access or send wires, that any funds he received were obtained illegally, that any of the charged credit cards were obtained or provided illegally, or that the funds provided to him in exchange for cryptocurrency were illicit. In other words, the Indictment is devoid of any allegations as to how Mr. Mizrahi possessed the requisite *mens rea* to commit bank fraud, wire fraud, or money laundering when he was entirely ignorant of the underlying schemes.

Rule 7(f) of the Federal Rules of Criminal Procedure permits a defendant to seek a bill of particulars to identify with sufficient clarity the nature of the charges pending against him, thereby enabling him to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense (*United States v. Davidoff*, 845 F.2d 1151, 1154 [2d Cir. 1988]). Even where there is voluminous discovery, a bill of particulars may be appropriate (*see*, *United States v. Ramirez*, 609 F.3d 495, 503 [2d Cir 2010], a bill of particulars was ordered because so much discovery was produced to the defendants, not too little). The purpose of a bill is to "advise the defendant of the specific acts of which he is accused" (*United States v. Rigas*, 490 F.3d 208, 237 [2d Cir. 2007]; *quoting*, *United States v. Walsh*, 194 F.3d 37, 47 [2d Cir. 1999]). Despite the many terabytes of data provided, Mr. Mizrahi still has not been provided sufficient clarity on the element of knowledge.

Counsel for Mr. Mizrahi and the government met on May 24, 2023, to discuss discovery matters and for counsel to seek clarification on Mr. Mizrahi's purported knowledge of the conspiracy. Counsel for Mr. Mizrahi also requested information in its letter of May 24, 2023, and has had telephonic discussions with the government in an effort to obtain such information. While the government did provide some indication of the evidence it intended to rely upon to demonstrate

11

Mr. Mizrahi's knowledge, it did not rise to the level necessary for him to be able to effectively prepare for trial and defend against the allegations made in the indictment.

Mr. Mizrahi is not requesting information on the Government's theory of its case, but needs clarification of the charges in the Indictment that are vital to his understanding of the charges pending and to the preparation of a defense (*United States v. Bortnovsky*, 820 F.2d 572, 575 [2d. Cir 1987]).

## POINT VI: THE DOCUMENTATION ON BOND CONDITIONS FOR MR. MIZRAHI SHOULD BE CORRECTED TO REFLECT THE COURT'S ORDER

As detailed above in the Factual Background, the intention of the magistrate judge based upon the recommendations and agreement of the parties was that Mr. Mizrhai would not have a bond condition imposed upon him that required him to continue or seek employment. Despite this, the bond documents setting the conditions upon Mr. Mizrahi appear to inadvertently impose a requirement that Mr. Mizrahi continue or seek employment (Exhibit C; Exhibit D, p.5).

It is important to note that upon his arrest, Mr. Mizrahi was the founder and president of LV.net, the largest internet services provider in Las Vegas, Nevada. He has since taken a temporary leave of absence from the role of president, but is still consulting and is active on a daily basis.

In light of these clarifications and based upon the agreement between the parties and the intentions of the magistrate judge, Mr. Mizrahi requests that the Court correct the bond conditions to remove the condition requiring Mr. Mizrahi continue or seek employment.

## POINT VII: THE DEFENSE SHOULD BE PERMITTED TO MAKE FURTHER MOTIONS BEFORE TRIAL

Mr. Mizrahi asks the Court's permission to make further motions before trial. Due to the substantial amount of discovery received so far, and the likelihood that additional discovery is forthcoming, Mr. Mizrahi may be required to make additional motions, including to move *in limine* to exclude evidence pursuant to the Federal Rules of Evidence.

## CONCLUSION

The pretrial relief sought herein should be granted.

**DATED:** **White Plains, New York**
**July 31, 2023**

**Respectfully Submitted,**

**By:  /s/ *Richard A. Portale*  **
**RICHARD A. PORTALE**
*Attorneys for Defendant*
**245 Main Street, Suite 605**
**White Plains, New York 10601**
**Tel:    (914) 359-2400**
**E-mail: rportale@portalerandazzo.com**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| United States of America, | |
| v. | **Case No.:** |
| | 1:22-cr-00650-JPO |
| JOEL ZUBAID, | |
| DAVID GORAN, | **DECLARATION** |
| | **OF COUNSEL** |
| JULIAN REBIGA, | |
|    a/k/a "Iulian Rebiga", and | |
| MARTIN MIZRAHI, | |
|    a/k/a "Marty Mizrahi" | |
| Defendants. | |

**RICHARD A. PORTALE, ESQ.**, declares under penalty of perjury that the foregoing is true and correct, and declare the following:

(1) I am an attorney at law admitted to practice before the United States District Court for the Southern District of New York (SDNY). I am trial counsel for defendant MARTIN MIZRAHI in this matter.

(2) This declaration is submitted in support of defendant's pretrial motions.

(3) No prior application has been made for the relief requested herein.

(4) This application is based on my review of the indictment, the government's discovery materials, the case file maintained at my office, conferences with my client, and conferences with members of the United States Attorney's Office for the Southern District of New York.

14

(5) In support of the requested relief, counsel refers the Court to the facts, arguments, and authorities set forth in the accompanying Memorandum of Law In Support of Pretrial Motions on Behalf of Martin Mizrahi and Exhibits, which are incorporated by reference.

I declare under penalty of perjury that the foregoing is true and correct.

**DATED:** White Plains, New York
July 31, 2023

Respectfully Submitted,

By: /s/ *Richard A. Portale*
**RICHARD A. PORTALE**
*Attorneys for Defendant*
**245 Main Street, Suite 605
White Plains, New York 10601
Tel: (914) 359-2400
E-mail: rportale@portalerandazzo.com**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| United States of America, | : |
| v. | : |
| | : |
| JOEL ZUBAID, | : |
| | : |
| DAVID GORAN, | : |
| | : |
| JULIAN REBIGA, | : |
|  a/k/a "Iulian Rebiga", and | : |
| | : |
| MARTIN MIZRAHI, | : |
|  a/k/a "Marty Mizrahi" | : |
| | : |
| Defendants. | : |

**Case No.:**

1:22-cr-00650-JPO

**AFFIDAVIT IN SUPPORT
OF MOTION FOR BILL
<u>OF PARTICULARS</u>**

---

**RICHARD A. PORTALE, ESQ.**, affirms to be true, and declares under penalty of perjury as follows:

(6) I am an attorney at law admitted to practice before the United States District Court for the Southern District of New York (SDNY). I am trial counsel for defendant MARTIN MIZRAHI in this matter.

(7) I make this affidavit in support of the defendant's motion for a Bill of Particulars.

(8) Prior to this motion, I have participated in letter correspondence, and telephonic and in-person meetings and conferences with attorneys for the government in an effort to clarify aspects of the government's allegations contained in the Indictment, in compliance with Local Rule 16.1.

(9) All of the particulars sought are necessary for the accused to be able to prepare a defense, to prepare to prove his innocence, to avoid surprise at trial, to enable him to enforce his "double jeopardy" rights, and to enable this Honorable Court to confine the

16

government's proof to the Indictment and make appropriate rulings on the sufficiency of the evidence and legality of the charges, and to enable the accused to make further appropriate motions requiring fuller understanding of the nature and scope of the charges.

(10)   The reasons supplied for the granting of particulars contained in the memorandum filed herewith are incorporated by reference.

**DATED:**     **White Plains, New York**
              **July 31, 2023**

                                      **Respectfully Submitted,**

                                      **By:** __/s/ *Richard A. Portale*_____
                                      **RICHARD A. PORTALE**
                                      *Attorneys for Defendant*
                                      **245 Main Street, Suite 605**
                                      **White Plains, New York 10601**
                                      **Tel:   (914) 359-2400**
                                      **E-mail: rportale@portalerandazzo.com**