# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------:

UNITED STATES OF AMERICA, : Case No.:22-cr-650

Plaintiff, :

-against- :

JULIAN REBIGA (3), : New York, New York

MARTIN MIZRAHI (4), : January 25, 2023

Defendants. :

---------------------------------:

TRANSCRIPT OF STATUS CONFERENCE HEARING

BEFORE THE HONORABLE SARAH L. CAVE

UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff: UNITED STATES ATTORNEY'S OFFICE
SOUTHERN DISTRICT OF NEW YORK
BY: Emily S. Deininger, AUSA
One St. Andrew's Plaza
New York, New York 10007

For Defendant: Martin Mizrahi
PORTALE RANDAZZO LLP
BY: Richard A. Portale, Esq.
Chad Mair, Esq.
245 Main Street - Suite 340
White Plains, New York 10601

For Defendant: Julia Rebiga
Federal Defenders of New York
BY: Kristoff I. Williams, Esq.
52 Duane Street - 10th Floor
New York, New York 10007

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

THE DEPUTY CLERK: Your Honor, this is in the matter of United States versus Julian Rebiga and Martin Mizrahi; 22-cr-650.

Counsel, please state your appearance for the record.

MS. DEININGER: Emily Deininger on behalf of the United States. Good morning, Your Honor.

THE COURT: Good morning.

MR. WILLIAMS: Good morning, Your Honor. Kristoff Williams. I'll be here from the Federal Defenders of New York, seeking appointment for Mr. Rebiga.

THE COURT: Okay. Good morning.

Good morning, Mr. Rebiga.

MR. PORTALE: Good morning, Your Honor. Richard Portale on behalf of Mr. Mizrahi from Portale Randazzo.

THE COURT: Okay. Good morning.

Good morning, Mr. Mizrahi.

DEFENDANT MIZRAHI: Good morning.

MR. MAIR: Good morning. Chad Mair, also with Portale Randazzo for Mr. Mizrahi.

THE COURT: Okay. Good morning.

Good morning, sir. All right. I'm Magistrate Judge Cave. Nice to meet you, both.

Ms. Deininger, may I have the date and time of arrest, please.

MS. DEININGER: Defendant Rebiga was arrested on December 8th in the Central District of California and presented that same day in the Central District of California.

Defendant Mizrahi was arrested on December 9th and presented that same day in the District of Nevada.

THE COURT: Okay. Very good. Thank you.

So, gentlemen, again, I'm Magistrate Judge Cave. And you're here today because you're charged with certain crimes in an indictment.

The purpose of today's proceeding is to advise you of certain rights that you have, inform you of the charges against you, consider whether counsel should be appointed, and decide under what conditions, if any, you'll be released -- you should be released pending trial.

I'll now explain certain constitutional rights that you have. You have the right to remain silent. You're not required to make any statements. Even if you've already made statements to the authorities, you do not need to make any further statements. Any statements that you do make can be

used against you.

You have the right to be released either with or without -- with or without conditions pending trial, unless I find that there are no conditions that would reasonably assure your presence at future court appearances and the safety of the community.

If you're not a U.S. citizen, you have the right to request that a government attorney or law enforcement official notify a consular officer from your country of origin that you've been arrested. In some cases, a treaty or other agreement may require the United States government to give that notice, whether you request it or not.

You have the right to be represented by an attorney during all court proceedings, including this one, and during all questioning by the authorities. You have the right to hire your own attorney. If you cannot afford an attorney, I will appoint one to represent you.

Mr. Rebiga, do you understand your rights as I've just explained them, sir?

DEFENDANT REBIGA: Yes.

THE COURT: Okay. Thank you.

Mr. Mizrahi, do you understand what I've

just explained?

DEFENDANT MIZRAHI: Yes, Your Honor.

THE COURT: Okay. Thank you.

Mr. Rebiga, I understand that you wish for me to appoint counsel. I do have in front of me a financial affidavit form that you've signed under penalty of perjury. Please be aware that you can be charged with perjury for any false statements in this affidavit, and you must tell the Court if there's any change to your financial status.

But based on the statements you've made in the financial affidavit, I will approve the appointment of counsel, and so Mr. Williams will represent you going forward, okay. Thank you.

DEFENDANT REBIGA: Thank you.

THE COURT: You can be seated.

So, Mr. Rebiga and Mr. Mizrahi, a grand jury of this district has returned an indictment against you, charging you with certain offenses.

Count 1 of the indictment charges that from April 2021 until June 2021, you and others conspired to commit wire fraud and bank fraud in this district, in violation of 18 U.S.C. §§ 1343 and 1344 and 1349.

In Count 2 -- you can take your seat,

sir. I'm so sorry.

In Count 2, the indictment charges that from April 2021 until June 2021 in this district, you and others participated in a scheme to defraud corporations, credit card companies, and other entities through schemes and by making unauthorized credit card charges using stolen credit card information and interstate wires, in violation of 18 U.S.C. §§ 1343 and 2.

In Count 3, the indictment charges that from April 2021 until June 2021, in this district, you and others participated in a scheme to defraud financial institutions by submitting false information to banks and credit card companies regarding the purpose, intended use and authorizations for wire transfers and credit card charges, and also used interstate wires, in violation of 18 U.S.C. §§ 1344 and 2.

In Count 4, from April 2021 until June 2021 in this district, you and others knowingly conspired to engage in money laundering of the criminally derived property from the wire and bank fraud conspiracy charged in Count 1 and the wire and bank -- wire fraud and bank fraud charged in Counts 2 and 3, in violation of 18 U.S.C. §§

1956(a)(1)(B)(i) and 1957(a) and 1956.

In Count 5, the indictment charges that from May 2021 until June 2021 in this district, you and others transferred the proceeds of your fraudulent schemes to accounts under your control and the control of your co-conspirators and converted the proceeds, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2.

And, finally, in Count 6, the indictment charges that from April 2021 until June 2021, in connection with the offenses charged in Counts 1, 2, and 3, you used the identification information of another person to make charges on that person's credit card, in violation of 18 U.S.C. §§ 1028(a) and 2.

Mr. Williams, do you have a copy of the indictment, and have you reviewed it with Mr. Rebiga?

MR. WILLIAMS: Yes, Your Honor.

THE COURT: Okay.

Same question, Mr. Portale.

MR. PORTALE: Yes, Your Honor, I have.

THE COURT: Okay. And, Mr. Williams, does your client waive a detailed reading of the indictment?

MR. WILLIAMS: He does.

THE COURT: And is he prepared to enter a plea today?

MR. WILLIAMS: Not guilty.

THE COURT: Okay. The Court will enter a plea of not guilty on your behalf.

Mr. Portale, does your client waive a detailed reading, and is he prepared to enter a plea today?

MR. PORTALE: Yes, Your Honor. Not guilty.

THE COURT: Okay. A not guilty plea will be entered on your behalf as well, Mr. Mizrahi.

Ms. Deininger, I direct the prosecution to comply with its obligation under *Brady versus Maryland* and its progeny to disclose to the defense all information, whether admissible or not, that is favorable to the defendants, material either to guilt or to punishment and known to the prosecution.

Possible consequences for noncompliance may include dismissal of individual charges or the entire case, exclusion of evidence and professional discipline or court sanctions on the responsible attorneys.

After this proceeding, I will enter a

written order that more fully describes this obligation and the possible consequences of failing to meet it, and direct the prosecution to review and comply with that order.

Does the prosecution confirm that it understands these obligations and will fulfill them?

MS. DEININGER: Yes, Your Honor, we do.

THE COURT: Okay. Thank you.

And what is the government's position as to bail, detention or release?

MS. DEININGER: Your Honor, the government is prepared to propose a bail package for both defendants that is, I believe, generally consistent with both Pretrial recommendations and what was set in the other districts.

THE COURT: Okay.

MS. DEININGER: So with regard to Mr. Mizrahi, the government would propose that he be released on a $500,000 bond to be secured by his residence -- the address, I believe, is 1097 Broadmoor Avenue in Las Vegas, Nevada -- and that, otherwise, the terms be set as recommended by Pretrial Services here.

So that is, number one, that Pretrial Services supervision as directed; travel restricted

to the Central District of California, the District of Nevada, and the Eastern and Southern District of New York, but that the defendant may travel to other districts for business purposes with pre-approval from Pretrial Services; that he surrender travel documents and not obtain any new ones; no contact with co-defendants or witnesses unless in the presence of counsel; surrender all weapons and firearms, and provide verification of such to Pretrial Services; not possess identifiers or access devices or accounts of others unless they are in his name or that of a minor child; to not liquidate any cryptocurrency without express permission of the Court; to not open any new bank, cryptocurrency or lines of credit accounts without express permission of the Court.

And then this last one, recommendation number 9, "Defendant must not receive money or cryptocurrency" -- this says "over 5 million," but my understanding in the prior district was that it was actually meant to be 5,000, and that is what the government would recommend.

THE COURT: Okay.

MS. DEININGER: So to not receive money or cryptocurrency over 5,000 from third parties

except for paychecks or employment compensation received from LV.Net without notifying Pretrial Services.

THE COURT: Okay. Thank you.

Mr. Portale, any comments on that?

MR. PORTALE: Yes, Judge, if I may.

THE COURT: Yeah.

MR. PORTALE: Just a couple things. I'll just confirm what counsel has stated about the 5 million versus 5,000. I confirm that.

THE COURT: Okay.

MR. PORTALE: Yeah, that was what was agreed. And I think it was Ms. Deininger and I that had originally agreed on it in the first place over the phone, right?

MS. DEININGER: Yeah.

MR. PORTALE: I do take issue with Pretrial's request that Mr. Mizrahi surrender weapons and firearms. So the good folks in Las Vegas did not require him to do that.

THE COURT: Okay.

MR. PORTALE: He's got some handguns at the house. He has a valid Nevada license, concealed carry license, that's valid through 2024.

THE COURT: Okay.

MR. PORTALE: I don't see any reason to change it. There's no allegations -- this is not a Hobbs Act robbery, you know. This is a financial crime allegation. I don't see any reason to change it.

THE COURT: Okay. Does -- you said the license is valid. Do you know if he showed that to the folks in Las Vegas?

MR. PORTALE: He didn't show it to them, but they went and did their homework, and I think it's in the report.

THE COURT: Okay.

MR. PORTALE: And I could find it if you'd like.

THE COURT: Okay. But they verified that the license is valid?

MR. PORTALE: I read -- I got it from them.

THE COURT: Okay. Okay. All right.

Do you know where they're stored in the home? Are they in a locked container? If you want to ask him --

MR. PORTALE: Of course. Yeah, yeah, yeah.

THE COURT: Okay.

MR. PORTALE: But I can find out precisely.

THE COURT: Okay. Please do.

(Discussion held off the record.)

MR. PORTALE: He has a closet that has facial-recognition feature -- security features.

THE COURT: Okay.

MR. PORTALE: The guns are locked in that closet, so, I guess, unless you're Mr. Mizrahi, you can't get in the closet.

THE COURT: Okay. Thank you. All right.

Ms. Deininger, do you have a reaction to that issue?

MS. DEININGER: Your Honor, I think generally our position is that, while defendants are being supervised, they shouldn't be in possession of firearms because of the risk that it poses to anyone going to conduct a home visit. So I think we would object to the continued -- continued possession of firearms.

THE COURT: Okay. Go ahead.

MR. PORTALE: If I could just say one thing --

THE COURT: Sure.

MR. PORTALE: -- and I don't want to be

confrontational, but Counsel didn't object when we set the first docket in which she consented to allowing him to keep his firearms. This was not an issue before, so I'm not sure what has changed since then. Nothing's changed.

THE COURT: Okay.

MR. PORTALE: In fact, he's traveled here from Las Vegas. He's working at our office for the week. He's -- I don't think there's any -- thank you.

THE COURT: Okay. Just give me one moment. If I could just ask Pretrial, is he going to continue to be supervised by the office in Nevada?

PRETRIAL SERVICES: That's correct, Your Honor.

THE COURT: Okay. And do you know if they've done any visits to the home as yet?

PRETRIAL SERVICES: Not to my knowledge, Your Honor.

THE COURT: Okay.

PRETRIAL SERVICES: But I can try to find out.

THE COURT: Okay. Do you know if they've --

MR. PORTALE: Two weeks ago, they did.

THE COURT: They did do a visit. Okay.

MR. PORTALE: Could I have one --

THE COURT: And was that unannounced, or did they notify Mr. Mizrahi before they came?

MR. PORTALE: About 20 minutes before they arrived, they said --

THE COURT: Okay.

MR. PORTALE: -- we're on the way.

THE COURT: Okay.

MR. PORTALE: Yeah.

THE COURT: I'm sorry. You had something else you wanted to --

MR. PORTALE: I just wanted to add something. His parents, his elderly parents, live with him.

THE COURT: Yeah.

MR. PORTALE: So, you know, if now everybody knows that he's unarmed and they're in Vegas, and then we're also then exposing his parents to --

THE COURT: No, I understand. I'm sort of torn between the issue that the government has raised about Pretrial Services officers coming to a home that firearms are present, and the -- their

safety, but I also understand Mr. Mizrahi's concerns about his own safety. And so I'm just trying to think of some compromise that we might make. I understand that Pretrial sometimes wants to make unannounced visits for obvious reasons, but if there could be some assurance that when they arrive that the firearms were, in fact, locked and stored and not -- you know, that he's not going to walk to the door with, you know, one of the firearms in his hand, for example.

MR. PORTALE: I don't think that's going to be a problem with him.

THE COURT: Okay.

MR. PORTALE: May I?

THE COURT: Go ahead.

(Discussion held off the record.)

MR. PORTALE: He just asked me to point out to you that Pretrial Services in Nevada knows about the firearms. They have no issue with it.

THE COURT: Okay. Right.

MR. PORTALE: And, I mean, if you would like to place him under oath and have him assure you that when he answers the door for Pretrial, you know, he's not going to be armed, but -- he's happy to do that. Whatever Your Honor --

THE COURT: I mean, I'll make it one of the conditions. And if the folks in Nevada have been comfortable with it so far, they're the ones who have to face this on a daily basis. If they have any concerns, they can obviously raise it with me and we can change the condition. But given that they've been operating on the status quo, I'm comfortable with leaving it as is, so --

MR. PORTALE: Thank you very much, Your Honor.

THE COURT: Okay. All right. So I will not require Mr. Mizrahi to surrender the firearms that he has in the home, provided that they do remain locked, and that on any visit from Pretrial Services, they also all remain in the locked storage cabinet. All right.

So, Mr. Mizrahi, I know the government just read the conditions, but I'll just repeat them again for the record; that I'm comfortable, based on my review of the indictment, the Pretrial Services reports that I have in our discussion here today, that you'll be released on the following conditions:

You'll need to sign a personal recognizance bond in the amount of $500,000 secured by your residence in Nevada. You'll be subject to

Pretrial Services supervision as directed. Your travel will be restricted to the Central District of California, the District of Nevada, Eastern and Southern Districts of New York. You may travel to other districts for business purposes with pre-approval from Pretrial. You must surrender any travel documents and not obtain any new travel documents. You may not have any contact with your co-defendant or witnesses unless in the presence of counsel.

I'm -- as I said, I'm not going to ask you to surrender the firearms, but they must remain in a locked cabinet. And they -- in particular, they must be in a locked cabinet on the arrival of Pretrial Services to your home. You may not possess any identifiers, access devices or accounts unless in your name or that of your minor child. You may not liquidate any cryptocurrency without Court permission. You may not open any new bank, cryptocurrency, or line-of-credit accounts without permission of the Court. And you may not receive any money or cryptocurrency over $5,000 from third parties except for paychecks, employment compensation received from LV.Net without notifying Pretrial Services.

Do you understand all those conditions I've just read, Mr. Mizrahi?

DEFENDANT MIZRAHI: Yes, Your Honor.

THE COURT: Okay. Thank you. Okay.

Now, let's talk about Mr. Rebiga.

MR. PORTALE: Wait.

THE COURT: Oh, I'm sorry.

MR. PORTALE: I'm so sorry.

THE COURT: It's okay.

MR. PORTALE: Before we move on, I'm not going to ask Your Honor to change or alter anything, but could I just address something in the addendum from Pretrial?

THE COURT: Yeah.

MR. PORTALE: I just want the record to be clear. On page 2 of Mr. Mizrahi's addendum, it's kind of unclear as to whether they're saying -- he's -- so one of the conditions that we had agreed upon was that he not open any new bank accounts, and so, you know, it's a condition, and it's important, right? So I've been discussing with AUSA Klein that his -- he's been encountering lots of problems. He's now been indicted for wire fraud and bank fraud, so banks are shutting him down.

THE COURT: Right.

MR. PORTALE: So he has been scrambling to stay in business. He has not opened a new bank account.

THE COURT: Okay.

MR. PORTALE: And so under financial resources, it's a little unclear as to whether he said that the bank accounts were new. And I was on the phone with Pretrial during that telephonic interview, as was Mr. Mair and Mr. Mizrahi, and what he said was that they were newer to him, so, like, they were kind of new, but not new since --

THE COURT: Not since the case.

MR. PORTALE: -- the conditions.

THE COURT: Okay.

MR. PORTALE: And I wanted to just clarify that so Your Honor knows he has not violated these conditions.

THE COURT: Okay. I understand. I didn't read it that way, but I understand the clarification.

MR. PORTALE: Thank you.

THE COURT: Okay. All right. Obviously, he can just -- if he needs to do something different, he just needs to tell Pretrial. So it's not an absolute restriction. It's just --

MR. PORTALE: Okay.

THE COURT: -- that if he's going to do it, he needs to get -- sorry -- he needs to get Court permission.

MR. PORTALE: This is Court permission. The old condition was Pretrial permission.

MS. DEININGER: Your Honor, the government would be fine with Pretrial --

THE COURT: Pretrial?

MS. DEININGER: -- permission.

MR. PORTALE: Pretrial? Okay. Because then the lawyers don't have to get together and come to the Court and --

THE COURT: That's fine. So I will change it to Pretrial.

MR. PORTALE: Okay. And just so you know, I called Mr. Klein and I explained to him, you know, what was going on. And just so everybody -- and we sent all the information to Pretrial as well.

THE COURT: Okay.

MR. PORTALE: Mr. Mizrahi did.

THE COURT: I appreciate that. Thank you for your candor. And the record -- this is being recorded, so the record reflects the correction that you made.

MR. PORTALE: Thank you.

THE COURT: And also, I will -- when I enter all the conditions on the disposition sheet, I will note that it's Pretrial permission, not Court permission that's required.

MR. PORTALE: Thank you.

THE COURT: Okay. All right.

Ms. Deininger, let's talk about Mr. Rebiga.

MS. DEININGER: For Defendant Rebiga, again, the government would propose the bond package with conditions that I think generally reflects what was set before. And I believe it will be acceptable to defense counsel, but we would propose that the defendant be released on a $75,000 bond to be secured by his residence. And that address, I believe, is 92 -- sorry -- 902 Firmona Avenue in Redondo Beach, California. He had previously been subject to home detention with location monitoring. I have confirmed with defense counsel, and we have agreed to reduce that to standalone location monitoring.

THE COURT: Okay.

MS. DEININGER: And, otherwise, conditions consistent with those proposed by

Pretrial here, so report to Pretrial Services as directed; surrender all passports and make no new applications; travel restricted to the Southern and Eastern Districts of New York and the Central District of California and points in between for travel to and from court and attorney visits; that he seek and maintain verifiable employment; no contact with victims or witnesses except in the presence of counsel; no possessing personal identifying information of others; no opening new bank accounts or cryptocurrency accounts unless approved by Pretrial; reside at a location approved by Pretrial, and do not relocate without Pretrial Services' permission; and maintain and obtain employment as approved by Pretrial Services.

THE COURT: Okay. Thank you.

All right, Mr. Williams, any comments or clarifications?

MR. WILLIAMS: We're in agreement with that, Your Honor. I think one of the other conditions we talked about removing from the previous set conditions was the digital device monitoring, so I just wanted to make that clear.

THE COURT: Okay.

MR. WILLIAMS: And as far as the $75,000

bond, that was already submitted in the Central District of California. It's been approved by that office. Just wanted to get clarification if we are being asked to submit that again here.

THE COURT: Okay. I think it is a new bond, usually, that we have people sign here, correct?

MS. DEININGER: That's correct. My understanding is it's -- the old one will be -- is -- is essentially released once an appearance occurs in this district.

THE COURT: Right.

MR. WILLIAMS: Okay.

THE COURT: Right. So just -- it's a new bond that has to be signed, but it replaces the old one, so -- all right.

So, just to repeat -- I know, Mr. Rebiga, you just heard this from Ms. Deininger -- it's okay. You can remain seated. I really -- I appreciate the respect, thank you, but I don't want you to have to keep getting up.

So you'll be released on the following conditions: You must post a new bond in this district or sign a new bond in this district in the amount of $75,000 secured by your residence in

Redondo Beach, California. You must report to Pretrial Services as directed. You must surrender any passport and make no new applications for any travel documents. Your travel is restricted to the Southern and Eastern Districts of New York and the Central District of California and points between for travel to and from court and attorney visits.

You must seek and maintain verifiable employment. You may not have any contact with victims or witnesses except in the presence of counsel. You may not possess others' personally identifying information. You may not open any new bank accounts or cryptocurrency accounts unless approved by Pretrial Services. And you must reside at a location approved by Pretrial Services and not relocate without permission of Pretrial Services. And we will modify -- you'll remain on home detention enforced by location monitoring, but we'll switch it to the standalone monitoring equipment.

Do you understand all those conditions, Mr. Rebiga?

DEFENDANT REBIGA: Yes, Your Honor.

THE COURT: Okay. Thank you.

Let me just explain to both of you, given the conditions that I've set for each of you

separately, if you fail to appear in court as required, or if you violate any of the conditions of your release, a warrant will be issued for your arrest. You and anyone who signed the bond will each be responsible for paying the full amount. In the case of Mr. Mizrahi, that's $500,000. In the case of Mr. Rebiga, that's $75,000. And you may be charged with a separate crime of bail jumping, which can mean additional jail time and/or fine.

If you commit a new offense while you're released, in addition to the sentence for that offense, you'll be sentenced to an additional term of imprisonment of not more than ten years if the offense is a felony, or not more than one year if the offense is a misdemeanor. And that term is executed after any other sentence is completed.

While you're awaiting trial, I must warn you not to have any contact with or engage in any intimidation of potential or designated witnesses or jurors, not to engage in any intimidation of any court officer, and not to engage in any conduct that would obstruct an investigation by law enforcement. And if you don't agree with the conditions I've set, you do have the right to appeal them.

Has Judge Oetken set a conference date in

the case?

MS. DEININGER: Yes, Your Honor. We have an initial pretrial conference scheduled for tomorrow at 11:00 a.m.

THE COURT: Okay. All right. Very good.

Anything further from the government today, then?

MS. DEININGER: No, Your Honor.

THE COURT: Okay. Mr. Williams?

MR. WILLIAMS: No, Your Honor. Thank you.

THE COURT: Okay. Mr. Portale?

MR. PORTALE: No, Your Honor.

THE COURT: Okay. Thank you.

Thank you very much, Mr. Rebiga and Mr. Mizrahi, for your cooperation. And we'll be adjourned. Have a good day.

0o0

C E R T I F I C A T E

I, Adrienne M. Mignano, certify that the foregoing transcript of proceedings in the case of USA v. Zubaid, et al., Docket #22CR0650 was prepared using digital transcription software and is a true and accurate record of the proceedings.

Signature Adrienne M. Mignano ___________________________

ADRIENNE M. MIGNANO, RPR

Date: June 14, 2023