UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------ x
                                :

  UNITED STATES OF AMERICA        :

                                :

          - v. -                 :             22 CR 650 (JPO)

                                :

  JOEL ZUBAID,                   :
  DAVID GORAN,                :
  JULIAN REBIGA,              :
    a/k/a "Iulian Rebiga," and   :
  MARTIN MIZRAHI,          :
    a/k/a "Marty Mizrahi,"     :

                                :

                 Defendants.     :

------------------------------------------------------ X

 

 

**GOVERNMENT'S OPPOSITION
TO DEFENDANT MARTIN MIZRAHI'S PRETRIAL MOTIONS**

 

 

                                    DAMIAN WILLIAMS
                                    United States Attorney
                                    Southern District of New York
                                    50 Main Street, Suite 1100
                                    White Plains, New York 10606

Benjamin Klein / Emily Deininger
Assistant United States Attorneys
*- Of Counsel -*

## Table of Contents

PRELIMINARY STATEMENT ..................................................................................................... 1

BACKGROUND ............................................................................................................................ 1

ARGUMENT ................................................................................................................................. 3

I.     The Court Should Deny Mizrahi's Motion to Dismiss Count Six ...................................... 3

      A.     Applicable Law ...................................................................................................... 3

      B.     Discussion ............................................................................................................. 7

II.    The Court Should Deny the Defendant's Motion for a Bill of Particulars ....................... 15

      A.     Applicable Law .................................................................................................... 15

      B.     Discussion ........................................................................................................... 16

III.   The Court Should Deny the Defendant's Myriad Discovery Requests
       and Premature Disclosure Demands .................................................................................. 18

      A.     The Government Is Aware of Its *Brady* and *Giglio* Obligations
           And Has Fully Complied to Date.......................................................................... 18

      B.     The Court Should Set Reasonable Deadlines for Production
           of Exhibit and Witness Lists ............................................................................... 20

      C.     Rule 16(a)(1) Does Not Support Defendant's Request for Disclosure
           of Non-Testifying Witness Statements................................................................. 21

      D.     The Court Should Order Disclosure of Rule 404(b) Evidence
           By the Deadline for Filing Motions In Limine .................................................... 22

IV.   The Government Takes No Position on the Defendant's Request to Alter His Bond........ 22

V.    The Defendant Should Not Be Permitted to Make Further Motions
       Contemplated in Rule 12(b)(3) .......................................................................................... 23

CONCLUSION............................................................................................................................. 24

i

**PRELIMINARY STATEMENT**

The Government respectfully submits this opposition to the pretrial motions of defendant Martin Mizrahi. For the reasons below, the defendant's motions lack merit and should be denied.

**BACKGROUND**

On or about December 2, 2022, Indictment 22 Cr. 650 (JPO) was filed charging defendants Joel Zubaid, David Goran, Julian Rebiga a/k/a "Iulian Rebiga," and Martin Mizrahi a/k/a "Marty Mizrahi" with: (i) conspiracy to commit wire fraud and bank fraud, in violation of 18 U.S.C. § 1349; (ii) wire fraud, in violation of 18 U.S.C. §§ 1343 and 2; (iii) bank fraud, in violation of 18 U.S.C. §§ 1344 and 2; (iv) conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h); (v) money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(b)(i) and 2; and (vi) aggravated identity theft, in violation of 18 U.S.C. §§ 1028A and 2.

As alleged in the Indictment, from at least in or about April 2021 through at least in or about June 2021, Mizrahi and his co-defendants participated in a conspiracy to defraud corporations, banks, credit card companies, and other entities, and to launder the fraud proceeds received from those victims. (Ind. ¶¶ 1-30.) As part of the conspiracy, the Indictment alleges, among other things, that Mizrahi and his co-defendants participated in the following schemes:

1. <u>Community Development Corporation Business Email Compromise Scheme</u>. By May 2021, co-conspirators of the charged defendants had obtained access to the business email account of the Chief Financial Officer ("CFO-1") of a community development corporation ("Corporation-1"). (Ind. ¶ 5.) CFO-1's email was then used to send fraudulent wire instructions to Corporation-1's bank ("Bank-1"). (Ind. ¶ 5.) After getting these instructions, from May 12, 2021 to June 1, 2021, Bank-1 sent a series of wires, totaling roughly $3.488 million, from Corporation-1's account to the accounts of third parties at other financial institutions. (Ind. ¶ 6.) These transfers included wires totaling about $1.57 million sent to an account controlled by defendants Zubaid and Goran

(the "Goran Account") at another bank ("Bank-2").  (Ind. ¶ 6.)  Stolen funds sent to the Goran Account were laundered by, among others, Zubaid, Goran, and Mizrahi, including by sending money to accounts controlled by Mizrahi and others and converting the money into Bitcoin.  (Ind. ¶ 7.)  At a certain point, Bank-2 froze the Goran Account and tried to claw back money sent to Mizrahi.  (Ind. ¶¶ 8-9.)  In response, Mizrahi made misrepresentations to Bank-2 about the purpose of the transfers in an effort to stop Bank-2 from taking back the stolen funds.  (Ind. ¶ 9.)

2.  Portfolio Company Business Email Compromise Scheme.  By June 2021, co-conspirators of the charged defendants had obtained access to the email account of an employee ("Employee-1") of a portfolio company owned by a private equity fund ("Corporation-2").  (Ind. ¶ 10.)  On June 28, 2021, Employee-1's compromised email was used to send fraudulent wire instructions directing a payment due to Employee-1 to an account controlled by defendants Zubaid and Rebiga (the "Rebiga Account").  (Ind. ¶ 10.)  After receiving these fraudulent wire instructions, on July 1, 2021, Corporation-2 caused a wire transfer of more than $2 million to be sent to the Rebiga Account.  (Ind. ¶ 11.)  Funds sent to the Rebiga Account were then laundered by, among others, Zubaid and Rebiga, including by sending money to multiple other accounts controlled by Rebiga.  (Ind. ¶ 12.)  At a certain point, the Rebiga Account was frozen.  (Ind. ¶¶ 13.)  Zubaid and Rebiga, among others, then made numerous attempts to unfreeze the funds, including by making misrepresentations about the purpose of the transfer to the Rebiga Account.  (Ind. ¶ 9.)

3.  Credit Card Fraud Scheme.  From April 2021 to June 2021, Zubaid, Rebiga, Mizrahi and others conducted a series of charges, totaling more than $3.8 million, on multiple credit cards issued in the names of third parties without those third parties' consent.  (Ind. ¶ 14.)  These charges were conducted via point-of-sale credit card machines associated with companies controlled by Mizrahi and Rebiga.  (Ind. ¶ 14.)  For example, in or about May 2021, a co-conspirator sent Zubaid

pictures of a driver's license and credit card of a third party, which Zubaid forwarded to, among others, Mizrahi, along with directions for making charges on the victim's card. (Ind. ¶ 30.) Mizrahi then used this information to make charges to the card and subsequently sent back receipts for the charges to Zubaid. (Ind. ¶ 30.) After multiple fraudulent credit card charges were disputed by card holders, Zubaid and Mizrahi prepared false justifications for the charges, which were sent to the credit card companies in an effort to conceal the fraud. (Ind. ¶ 15.)

## ARGUMENT

### I.   The Court Should Deny Mizrahi's Motion to Dismiss Count Six

Mizrahi moves to dismiss Count Six of the Indictment (aggravated identity theft), arguing (1) that Section 1028A is unconstitutionally vague, and (2) that misappropriation of another's means of identification is not at the crux of the conduct alleged in the Indictment. These arguments are meritless. Eight justices of the Supreme Court recently construed Section 1028A and agreed on its bounds. Under the Court's construction, "classic identity theft"—like the conduct charged in the Indictment—falls well within the scope of the statute and is plainly impermissible.

#### A.   Applicable Law

##### 1.   Standard for a Motion to Dismiss

Under Federal Rule of Criminal Procedure 7, an indictment must contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." FED. R. CRIM. P. 7(c)(1). "The purpose of this requirement is to give a defendant adequate notice of the charges to permit him to plead former jeopardy upon prosecution and to enable him to prepare a defense." *United States v. Hernandez*, 980 F.2d 868, 871 (2d Cir. 1992). On a motion to dismiss, the Court evaluates the indictment in its entirety, *id.*, and all allegations in the indictment are assumed to be true, *United States v. Goldberg*, 756 F.2d 949, 950 (2d Cir. 1985).

3

"A defendant challenging the sufficiency of an indictment on a motion to dismiss faces a high hurdle." *United States v. Percoco*, 2017 WL 6314146, at *2 (S.D.N.Y. Dec. 11, 2017). That is particularly so where, as here, the indictment "provide[s] significant detail about the factual nature of the charges." *United States v. Dawkins*, 999 F.3d 767, 779 (2d Cir. 2021).

"An indictment is sufficient as long as it (1) contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and (2) enables the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Dawkins*, 999 F.3d at 779 (quoting *United States v. Wedd*, 993 F.3d 104, 120 (2d Cir. 2021)). The Second Circuit has repeatedly stated that "[t]o satisfy these requirements, 'an indictment need do little more than track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.'" *Id.*; *see also United States v. Carr*, 582 F.2d 242, 244 (2d Cir. 1978) ("Where ... an indictment tracks the statutory language and specifies the nature of the criminal activity . . . it is sufficiently specific to withstand a motion to dismiss.").

"[T]he sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment." *United States v. Alfonso*, 143 F.3d 772, 777 (2d Cir. 1998). To the contrary, "authorizing district court judges to resolve dispositive fact-based evidentiary disputes on Rule 12(b) motions risks invading 'the inviolable function of the jury' in our criminal justice system" and "upset[ting] the policy choices reflected in the criminal discovery rules" by forcing the Government "to reveal its complete case before trial" in order to "overcome such motions." *United States v. Sampson*, 898 F.3d 270, 280–81 (2d Cir. 2018). Thus, "a judge cannot resolve ... on a Rule 12(b) motion" any "factual dispute that is inextricably intertwined with a defendant's potential culpability," *id.* at 281, as courts "do not evaluate the adequacy of the facts to satisfy the elements of the charged offense" until "after trial," *Wedd*, 993 F.3d at 121.

4

### 2.  Aggravated Identity Theft

Section 1028A prohibits the misuse of a means of identification during and in relation to certain predicate felony offenses.  Under the statute:

> Whoever, during and in relation to any [predicate] felony violation … , knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years.

18 U.S.C. § 1028A(a)(1).

Section 1028A enumerates multiple offenses that qualify as predicate felony violations, including wire fraud, in violation of 18 U.S.C. § 1343, bank fraud, in violation of 18 U.S.C. § 1344, and conspiracy to commit wire fraud or bank fraud in violation of 18 U.S.C. § 1349.  *See* 18 U.S.C. § 1028A(c)(5) (defining the term "felony violation enumerated in subsection (c)" to include "any provision contained in chapter 63 (relating to mail, bank, and wire fraud)"); *see generally* Title 18, United States Code, Chapter 63 (including Sections 1343, 1344, and 1349).

For purposes of the statute, a "means of identification" includes "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any—(A) name, … driver's license … , (C) unique electronic identification number, … or (D) telecommunication identifying information or access device …."  18 U.S.C. § 1028(d)(7). "[A]ccess device," in turn, "means any card, plate, code, account number, electronic serial number, mobile identification number, personal identification number, or other telecommunications service, equipment, or instrument identifier, or other means of account access that can be used, alone or in conjunction with another access device, to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds."  *Id.* § 1029(e).  "Credit cards and debit cards (and the account numbers associated with both) are considered 'access devices,'"

5

*United States v. Pickett*, 612 F.3d 147, 148 n.1 (2d Cir. 2010), and, they are therefore, "means of identification," *see* 18 U.S.C. § 1028(d)(7).

Recently, the Supreme Court recently addressed when a means of identification is "use[d]" "in relation to" a predicate offense. *See Dubin v. United States*, 143 S. Ct. 1557 (2023). As the Court explained, the statute "is violated when the defendant's misuse of another person's means of identification is at the crux of what makes the underlying offense criminal." *Id.* at 1563. This "captures the ordinary understanding of identity theft, where misuse of a means of identification is at the crux of the criminality." *Id.* at 1567-68 ("identity theft is committed when a defendant uses the means of identification itself to defraud or deceive"). "[W]ith fraud or deceit crimes … , the means of identification specifically must be used in a manner that is fraudulent or deceptive. Such fraud or deceit going to identity can often be succinctly summarized as going to 'who' is involved." *Id.* at 1573; *id.* at 1568 ("When a means of identification is used deceptively, this deception goes to "who" is involved, rather than just "how" or "when" services were provided.").

### 3. Vagueness Doctrine

The "void for vagueness" doctrine, grounded in the Due Process Clause, "requires that a penal statute define the criminal offense [1] with sufficient definiteness that ordinary people can understand what conduct is prohibited and [2] in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983); *see also United States v. Williams*, 553 U.S. 285, 304 (2008) (explaining that to be unconstitutionally vague, a statute must be "so standardless that it authorizes or encourages seriously discriminatory enforcement"). As the Supreme Court has observed, there is a "strong presumptive validity that attaches to an Act of Congress." *United States v. Nat'l Dairy Prod. Corp.*, 372 U.S. 29, 32 (1963);

*see also United States v. Houtar*, 980 F.3d 268, 273 (2d Cir. 2020) (explaining that courts "presume that acts of Congress are not unconstitutionally vague").

Where, as here, "the interpretation of a statute does not implicate First Amendment rights, it is assessed for vagueness only 'as applied,' *i.e.*, 'in light of the specific facts of the case at hand and not with regard to the statute's facial validity.'" *United States v. Rybicki*, 354 F.3d 124, 129 (2d Cir. 2003) (quoting *United States v. Nadi*, 996 F.2d 548, 550 (2d Cir. 1993)). "Because the statute is judged on an as applied basis, one whose conduct is clearly proscribed by the statute cannot successfully challenge it for vagueness." *Nadi*, 996 F.2d at 550; *see also Farrell v. Burke*, 449 F.3d 470, 494 (2d Cir. 2006) (explaining that, "even in the absence of [clear] standards," an as-applied challenge fails if "the conduct at issue falls within the core of the statute's prohibition").

It is well established that where a criminal statute contains a "scienter requirement," vagueness concerns are "ameliorated." *Hill v. Colorado*, 530 U.S. 703, 732 (2000); *see also Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 499 (1982) ("[T]he Court has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed."). In such circumstances, a "vagueness challenge must be met with some measure of skepticism, at least with regard to the 'fair notice' prong of *Kolender*." *United States v. Roberts*, 363 F.3d 118, 123 (2d Cir. 2004).

**B.  Discussion**

**1.  Section 1028A Is Not Unconstitutionally Vague**

Citing the Supreme Court's recent decision in *Dubin*, the defendant contends that Section 1028A is unconstitutionally vague because "[i]t is entirely unclear when a 'means of identification' is used in a way that it is at the 'crux' of the offense." Def. Br. 6. The assertion is startling. That Section 1028A is violated when a means of identification is misused in a way that is at the "crux"

7

of the offense is the very *holding* of *Dubin*.  143 S. Ct. at 1563.  The defendant cites no case that stands for the remarkable proposition that applying the Supreme Court's construction of a statute leaves that statute unconstitutionally vague, and the Government is aware of no such decision.

Indeed, the entirety of the defendant's vagueness claim appears to rest on Justice Gorsuch's "worry," set out in a lone concurring opinion in *Dubin*, that the majority's construction of Section 1028A had "stumbled upon" a more fundamental vagueness concern in the statute.  143 S. Ct. at 1574.  But the defendant ignores completely that *eight* other justices rejected that position.  As the majority opinion in *Dubin* very clearly explains, Justice Gorsuch's concern "that it is too difficult to discern when a means of identification is at the crux of the underlying criminality … is not … the standard for striking down an Act of Congress as unconstitutionally vague":

> Adrift in a blizzard of its own hypotheticals, the concurrence believes that it is too difficult to discern when a means of identification is at the crux of the underlying criminality.  The concurrence's bewilderment is not, fortunately, the standard for striking down an Act of Congress as unconstitutionally vague.  There will be close cases, certainly, but that is commonplace in criminal law.  Equally commonplace are requirements that something play a specific role in an offense, whether that role is articulated as a "nexus," a "locus," or "proximate cause."  Such requirements are not always simple to apply.  Yet resolving hard cases is part of the judicial job description.  Hastily resorting to vagueness doctrine, in contrast, would hobble legislatures' ability to draw nuanced lines to address a complex world.  Such an approach would also leave victims of actual aggravated identity theft, a serious offense, without the added protection of § 1028A(a)(1).

*Dubin*, 143 S. Ct. at 1573 n.10.  The defendant's invitation to simply ignore the majority in *Dubin*, and "[h]astily resort[] to vagueness doctrine," should be resoundingly rejected.  *Id.*

Notably, apart from his blanket reliance on Justice Gorsuch's concurrence, the defendant does little to spell out why he believes Section 1028A to be vague.  *See generally* Def. Br. 4-6.  He does not specify the language in the statute he challenges.  Nor does he make any effort to apply the statute to the facts of his case—even though he may only bring a vagueness challenge "as

applied." *See Rybicki*, 354 F.3d at 129 (observing that, where "the interpretation of a statute does not implicate First Amendment rights, it is assessed for vagueness only 'as applied'").

And that is for good reason.  As far as the Government is aware, even before the Supreme Court clarified the scope of Section 1028A in *Dubin*, no court had ever sustained a vagueness challenge to the statute, and multiple courts, including the Second Circuit, had rejected them.  *See, e.g.*, *United States v. Wedd*, 993 F.3d 104, 124 (2d Cir. 2021) (rejecting as-applied vagueness challenge to Section 1028A where defendant and co-conspirators used a computer program to subscribe cell phone users to paid text message services without their consent); *United States v. Aldissi*, 758 F. App'x 694, 704 (11th Cir. 2018) ("Defendants' argument that the aggravated identity theft statute is unconstitutionally vague fails."); *United States v. Hampton*, 2022 WL 1664457, at *5 (E.D. Pa. May 25, 2022) ("Hampton's assertion that 18 U.S.C. § 1028A is unconstitutionally vague is meritless."); *United States v. Pavone*, 2020 WL 4429256, at *2 (D. Ariz. July 31, 2020) (it "strains credulity to suggest that Defendant could not discern that using someone else's personal information to create forged documents and then selling those forgeries as authentic would be prohibited"); *Summons v. United States*, 2019 WL 830965, at *4 (W.D. Tex. Feb. 21, 2019) ("[T]he Court is unaware of any published opinion by any federal court finding 18 U.S.C. §§ 1343, 1349, or 1028A(a)(1) unconstitutionally vague.  Accordingly, this claim is without substantive merit.").

As the reasoning of these decisions reflects, under the traditional two-pronged inquiry, any as-applied vagueness challenge to Section 1028A should be rejected:

(a) <u>Fair notice</u>.  Beginning with fair notice, on its face, the plain language of Section 1028A is clear—prohibiting the knowing "transfer," "possession," or "use" of a means of identification during and in relation to specifically enumerated felony offenses.  *See* 18 U.S.C. § 1028A(a)(1).  As the Supreme Court explained in *Dubin*, Congress employed this "trio of verbs" to "capture

various aspects of 'classic identity theft.'" 143 S. Ct. at 1569. There is (i) the unlawful "possession" of a means of identification—*e.g.*, "the defendant [who] has gone through someone else's trash to find discarded credit card and bank statements," *id.*; (ii) the unlawful "transfer" of such information—*e.g.*, "the bank employee who passes along customer information to an accomplice," *id.*; and (iii) the unlawful "use" of such information—*e.g.*, "a defendant [who] has used another person's identification information to get access to that person's bank account," *id.*

Providing further clarity, the Court in *Dubin* explained when precisely a person's "use" of a means of identification is "in relation to" a predicate felony—holding that Section 1028A "is violated when the defendant's misuse of another person's means of identification is at the crux of what makes the underlying offense criminal." *Id.* at 1563. For "fraud or deceit crimes," like those charged here, this requires that "the means of identification … be used in a manner that is fraudulent or deceptive." *Id.* at 1573. As a useful heuristic, the Court observed that "fraud or deceit going to identity can often be succinctly summarized as going to 'who' is involved." *Id.* Thus, for example, "an ambulance service that actually transported patients but inflated the number of miles driven" would not violate Section 1028A because the "crux" of the fraud is not "who" was receiving services but "how" services were rendered. *Id.* at 1564. In contrast, a "pharmacist who swipes information from the pharmacy's files and uses it to open a bank account in a patient's name" violates the statute because the "crux" of the fraud is "who" owns the account. *Id.*

As the Supreme Court's construction makes clear, Section 1028A provides "ordinary people" sufficient notice as to what conduct is prohibited. *Kolender*, 461 U.S. at 357. That is particularly so when the conduct is examined "as applied" to the defendant, as it should be in this context. *Farrell*, 449 F.3d at 486. Here, the defendant is not charged in some scheme that involved the ancillary use of a means of identification; he did not, for example, inflate the prices of services

10

he was actually providing.  Rather, the Indictment alleges that the defendant made millions of dollars in bogus charges on credit cards issued in the names of third parties without their consent. (Ind. ¶¶ 14-15, 30.)  Using credit cards to make fraudulent and unauthorized charges in the names of others is "classic identity theft."  *See Dubin*, 143 S. Ct. at 1568.  Indeed, it "strains credulity to suggest that Defendant could not discern that using someone else's" credit card to run such fraudulent charges is impermissible under Section 1028A.  *Pavone*, 2020 WL 4429256, at *2.

For these same reasons, it is also important that Section 1028A contains a scienter requirement, which, as the Supreme Court has repeatedly observed, "ameliorates" vagueness concerns, *Hill*, 530 U.S. at 732, "especially with respect to the adequacy of notice to the complainant that his conduct is proscribed," *Hoffman*, 455 U.S. at 499.  Here, "Section 1028A's 'knowing' requirement applies to the 'use' of the identifying information, and that it belonged to another.  Accordingly, [Mizrahi] had fair notice that [his] conduct ran afoul of the law."  *United States v. Kimble*, 2015 WL 4164820, at *16 (D. Md. July 8, 2015) (rejecting vagueness challenge to Section 1028A); *Dubin*, 143 S. Ct. at 1567 n.5 (observing that, under Section 1028A, "a defendant must know that the 'means of identification' he or she unlawfully transferred, possessed, or used, in fact, belonged to 'another person.'"); *see also United States v. Zahavi*, 2012 WL 5288743, at *5 (S.D.N.Y. Oct. 26, 2012) (Oetken, J.) (rejecting challenge to 18 U.S.C. § 1014 and citing the "familiar observation that … a scienter requirement ameliorates vagueness concerns").

(b) Arbitrary or discriminatory enforcement.  Nor is there any credible claim that Section 1028A encourages arbitrary or discriminatory enforcement.  Again, the plain language of the statute limits its enforcement to those who knowingly transfer, possess, or use, without lawful authority, a means of identification of another, during and in relation to specific predicate offenses. *See* 18 U.S.C. § 1028A(a)(1).  The defendant makes no effort to explain, as required, how this

language is of such "standardless sweep" that it "allows policemen, prosecutors, and juries to pursue their personal predilections," such that it would constitute a violation of due process. *Smith v. Goguen*, 415 U.S. 566, 575 (1974); *see also Wedd*, 993 F.3d at 124 (rejecting vagueness challenge to Section 1028A); *Kimble*, 2015 WL 4164820, at *17 (An "intent requirement alone tends to defeat any vagueness challenge based on the potential for arbitrary enforcement.").

Equally important, even putting aside the general standards for enforcing Section 1028A, any "as applied" challenge by the defendant should fail because the conduct charged in the Indictment—*i.e.*, using point of sale machines to run millions of dollars in fraudulent charges on third parties' credit cards—fall well within the "core of the statute's prohibition." *Farrell*, 449 F.3d at 494. Indeed, as the Supreme Court observed in *Dubin*, "use" of another's means of identification (*e.g.*, a credit card) "involving fraud or deceit about identity" is "classic identity theft." 143 S. Ct. at 1570. In such circumstances, any vagueness challenge under the second prong of *Kolender* should be rejected, as there is no concern that "the enforcement before the court was … the result of the unfettered latitude that law enforcement officers and factfinders might have in other, hypothetical applications of the statute." *Farrell*, 449 F.3d at 494; *see Brache v. Westchester County*, 658 F.2d 47, 51 (2d Cir. 1981) ("[I]f a statute has a core meaning that can reasonably be understood, then it may validly be applied to conduct within the core meaning.").

### 2. Misuse of Another Person's Means of Identification is at the Crux of the Conduct Charged in the Indictment

In a closely related argument, the defendant contends that Count Six should be dismissed because, he argues, the misuse of another person's means of identification is not at the "crux" of what makes his alleged conduct criminal. *See* Def. Br. at 6-8. The defendant is wrong.

12

As the Court explained in *Dubin*, "fraud or deceit going to identity can often be succinctly summarized as going to 'who' is involved," rather than "what" is provided. 143 S. Ct. at 1573. Thus, an individual who uses stolen information to open a bank account in another's name violates Section 1028A, because the misuse of the means of identification (*i.e.*, the person's name) is "integral to" what makes the conduct fraudulent—*i.e.*, a misrepresentation about *who* was involved in the transaction is at the crux of the fraud. *Id.* at 1565. By contrast, a waiter who serves flank steak but charges a diner's credit card for filet mignon does not violate the statute, because the use of the means of identification (*i.e.*, the credit card) is not "integral to" what makes the conduct fraudulent—*i.e.*, the misrepresentation concerns "what" was provided, not "who" received it.

Applying this heuristic, it is readily apparent that misuse of a means of identification—the credit cards—of another person is at the "crux" of the criminal conduct alleged in the Indictment. The defendant is charged with obtaining the credit card information of third parties, and, without their consent, running *wholly fraudulent* charges for millions of dollars in their names and without their consent. (Ind. ¶¶ 14-15, 30.) The crux of the fraud thus goes directly to "who" was involved—that is, the defendant misrepresented that these charges were being made by and for the cardholders, while, in truth, as the Indictment alleges, the charges were made for the defendant and his co-conspirators, without the cardholders' consent. (Ind. ¶ 14.) Indeed, after the true card holders disputed these charges as fraudulent, the defendant and his co-conspirators prepared fake justifications, which were sent to the credit card companies to attempt to make the charges appear legitimate. (Ind. ¶ 15.)

Notably, in his papers, the defendant does not contest that the misuse of credit cards was at the center of the fraud. Instead, his challenge appears to be based on a fundamental misapprehension as to the meaning of "means of identification." Def. Br. 6-8. In particular, the

13

defendant appears to focus on the Indictment's allegations that the defendant received copies of the cardholders' driver's licenses along with their credit card information (*see* Ind. ¶¶ 14-15, 30), arguing that the discovery does not "indicate[] a requirement by the banks or credit card companies to produce identification cards," Def. Br. 8, and that "possession of a photograph of another's identification card is 'ancillary' at best to the crux of the crime," *id.*

But that misses the point. The relevant statutory language and Second Circuit case law make clear that the credit card information the defendant received is itself a "means of identification." *United States v. Pickett*, 612 F.3d 147, 148 n.1 (2d Cir. 2010); 18 U.S.C. §§ 1029(e) (defining "access device" to include "any card, ... account number, ... or other means of account access that can be used ... to obtain money, goods, services, or any other thing of value"); *Id.* § 1028(d)(7) (defining "means of identification" to include "any … access device (as defined in section 1029(e)"); *see also United States v. Bridges*, 739 F. App'x 323, 329 (6th Cir. 2018) ("A credit card account number is a 'means of identification'…."); *United States v. Rojas*, 826 F.3d 1126, 1130 (8th Cir. 2016) ("[T]he defendant knowingly possessed or used some means of identification—here, credit card account information."); *United States v. Battle*, 422 F. App'x 100, 103 (3d Cir. 2011) ("An access device such as a credit card qualifies as a 'means of identification.'"); *United States v. Popa*, 361 F. App'x 854, 856 (9th Cir. 2010) ("The use of … the credit cards was in itself sufficient to support a conviction under section 1028A.").

And there can be no serious dispute that misuse of other persons' credit cards was at the crux of the criminal conduct charged in the Indictment—namely, a fraud scheme built on making millions of dollars in unauthorized charges on third parties' credit cards without their consent. Under the framework articulated by the Supreme Court in *Dubin*, this conduct constitutes "classic identity theft," and, as such, falls comfortably within the scope of Section 1028A. *See* 143 S. Ct.

14

at 1568 (citing Webster's definition of "identity theft" as "the fraudulent appropriation and use of another person's identifying data or documents, *as a credit card*" (emphasis added)).

## II.     The Court Should Deny the Defendant's Motion for a Bill of Particulars

The defendant also moves for a bill of particulars as to "how the government[] intends to prove" his *mens rea* at trial.  Def. Br. 11.  The defendant is not entitled to information about how the Government will prove its case, and his request should thus be denied.

### A.  Applicable Law

A bill of particulars is only appropriate to furnish facts that are necessary to apprise a defendant of the charges against him with sufficient precision to (i) enable him to prepare his defense, (ii) avoid unfair surprise at trial, and (iii) preclude a second prosecution for the same offense.  FED. R. CRIM. P. 7(f); *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987); *accord United States v. Segovia-Landa*, 2021 WL 1966117, at *3 (S.D.N.Y. May 17, 2021) (Oetken, J.) (same).  In other words, a "'bill of particulars is required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused.'"  *Segovia-Landa*, 2021 WL 1966117, at *3 (quoting *United States v. Skelos*, No. 15-CR-317, 2015 WL 6159326, at *12 (S.D.N.Y. Oct. 20, 2015)).

Acquisition of "'evidentiary detail is not the function of the bill of particulars.'"  *United States v. Bonventre*, 646 F. App'x 73, 78–79 (2d Cir. 2016) (quoting *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990)).  Thus, "a defendant is not entitled to disclosure of the manner in which the [G]overnment will attempt to prove the charge, the precise manner in which the [G]overnment will allege the defendant committed the crimes charged, or a preview of the [G]overnment's evidence or legal theories."  *Skelos*, 2015 WL 6159326, at *13; *accord United*

15

*States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988) (citing *United States v. Gottlieb*, 493 F.2d 987, 994 (2d Cir. 1974) ("The prosecution need not particularize all of its evidence.")).

"The standard for granting a bill of particulars is not whether it would be helpful to [the] defense but, rather, whether it is necessary ...." *United States v. Block*, 2017 WL 1608905, at *6 (S.D.N.Y.  Apr. 28, 2017) (Oetken, J.); *accord United States v. Rose*, 2021 WL 2117119, at *14 (S.D.N.Y. 2021); *United States  v. Horge*, 2020 WL 6273932, at *3 (S.D.N.Y. 2020).  Indeed, bills of particulars are generally disfavored because they risk "confin[ing] the [G]overnment's evidence at trial to the particulars furnished."  *United States v. Payden*, 613 F. Supp. 800, 816 (S.D.N.Y. 1985); *Alston v. United States*, 2021 WL 2380064, at *7 (S.D.N.Y. 2021) ("A bill of particulars is generally disfavored in federal practice; it is ordered only where the indictment (as supplemented by discovery and other disclosures) is not sufficient to provide adequate notice to a defendant.").

In assessing the need for a bill of particulars, courts consider whether the information sought by defendant, even if not in the indictment, has been provided in some acceptable alternate form, including discovery.  *Bortnovsky*, 820 F.2d at 574; *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999) (finding defendant adequately informed of nature of charges through discovery); *United States v. Mangini*, 2021 WL 1268507, at *2 (S.D.N.Y. 2021) (Oetken, J.) ("A bill of particulars is not necessary where the Government makes sufficient disclosures concerning its evidence and witnesses by other means, such as through a detailed indictment and discovery.").  The decision to grant or deny a bill of particulars is within the sound discretion of the district court.  *United States v. Panza*, 750 F.2d 1141, 1148 (2d Cir. 1984).

### B.  Discussion

The Government has more than satisfied its obligation to inform the defendant of "the specific acts of which he is accused."  The Indictment spans fifteen pages and contains extensive

allegations laying out a conspiracy, by the defendant and others, to defraud corporations, banks, credit card companies, and other entities, and to launder the fraud proceeds received from those victims.  (Ind. ¶¶ 1-30.)  As the defendant acknowledges, beyond the allegations of the Indictment, the "government has made a series of discovery productions, totaling several terabytes."  Def. Br. at 3.  These productions have included detailed information about the transactions underlying the fraud as well as numerous messages between co-conspirators sent in furtherance of the scheme.  The Government has also responded to inquiries from defense counsel, *id.* at 3-4, discussed the discovery productions by phone, *id.* at 11, and participated in an in-person meeting with defense counsel during which it "provide[d] some indication of the evidence it intended to rely upon to demonstrate Mr. Mizrahi's knowledge," *id.* at 11-12.  Nothing more is required.[1]

The defendant, however, argues that he is entitled to know how the Government intends to prove that he *knew* that his conduct was wrongful in relation to those acts—that he "knew the unlawful nature of the actions to obtain access or send wires, that any funds he received were obtained illegally, that any of the charged credit cards were obtained or provided illegally, or that the funds provided to him in exchange for cryptocurrency were illicit."  Def. Br. at 11.  But the Second Circuit has expressly rejected such requests, *see Bonventre*, 646 F. App'x at 78-79 (affirming denial of request for "particulars as to the records alleged to be false, why they were false, and *how [the defendant] knew of their falsity*" (emphasis added)), because "such 'evidentiary detail is not the function of the bill of particulars,'" *id.* (quoting *Torres*, 901 F.2d at 234).

---

[1]    Although omitted by the defendant, the discovery provided by the Government has also included early production of § 3500 materials, which include substantial discussion of the charged fraud, including in relation to the defendant's *mens rea*.

So too here.  The defendant's request for detail about how the Government intends to prove his *mens rea* seeks "a preview of the Government's case before trial."  *United States v. Triana-Mateus*, 2002 WL 562649, at *5 (S.D.N.Y. Apr. 15, 2002) ("A bill of particulars is not meant to be a tool to compel disclosure of the Government's case before trial.").  That is beyond the appropriate scope of a bill of particulars, and the defendant's request should be rejected.  *See United States v. Leonelli*, 428 F. Supp. 880, 882 (S.D.N.Y. 1977) ("We state emphatically that the law does not impose upon the Government an obligation to preview its case or expose its legal theory.  Nor is the Government required to disclose ... the manner in which it will attempt to prove the charges.").

## III.    The Court Should Deny the Defendant's Myriad Discovery Requests and Premature Disclosure Demands

The defendant also seeks, either immediately or in the near future, various discovery and disclosures.  Although he never claims the Government has failed to comply with its obligations, the defendant nonetheless demands various *Brady* and *Giglio* disclosures, exhibit and witness lists, additional purported Rule 16 materials, and Rule 404(b) disclosures.  *See* Def. Br. 8-10.  Discovery and disclosure in this matter, however, should proceed on a schedule set by this Court in accordance with the common practice in this District.

### A.  The Government Is Aware of Its *Brady* and *Giglio* Obligations And Has Fully Complied to Date

The defendant asks the Court "to direct the government to disclose any *Brady* or *Giglio* materials by a date that will enable him to make effective use of the materials at trial."  Def. Br. 9.  But the Court has already entered an order pursuant to Rule 5(f), *see* Dkt. 31, and, as the Government stated in its initial discovery cover letter, the Government recognizes its obligations under *Brady* and its progeny and has and will comply with those obligations.  To date, the

Government is unaware of any *Brady* material, but will produce any such material reasonably promptly after it is discovered.  *See United States v. Coppa*, 267 F.3d 132, 144 (2d Cir. 2001).

The defendant's request that the Court should, "as a matter of case management," require the Government to provide "the Court" with any "favorable" information that the Government determines is *not* "material," so that the Court can double-check the Government's conclusion, Def. Br. 9, should likewise be rejected.  The Government is not aware of any authority for such a procedure, particularly in the absence of any allegation that the Government has improperly withheld any *Brady* materials, and the defendant cites none.  The lone case relied on by the defendant—the Second Circuit's decision in *Coppa*—does not remotely support the relief he seeks. To the contrary, in *Coppa*, the Court held that a district court *erred* in requiring the immediate production of *Brady* and *Giglio* material, and merely observed that the case "presents no occasion to consider the scope of a trial judge's discretion to order pretrial disclosures as a matter of sound case management."  267 F.3d at 146.  The defendant makes no effort to explain how requiring the Court to conduct a roving review of the Government's file to ensure that it is complying with its *Brady* obligations in any way relates to "sound case management."   Instead, this Court should follow the many decisions in this District that rely on the Government's representations as to its compliance with its disclosure obligations.  *E.g.*, *United States v. Avenatti*, 559 F. Supp. 3d 274, 285 (S.D.N.Y. 2021) ("To the extent that [defendant] seeks evidence pursuant to *Brady*, *Giglio*, and their progeny, the request is denied on the basis of the Government's good faith representation that it has complied with its obligations and will continue to do so.").

As for *Giglio* material, the Government is once again aware of its obligations under *Giglio* and its progeny and will timely provide *Giglio* material (along with § 3500 material).  As the Court knows, the practice in this District, which the Government intends to follow, is that *Giglio* and

19

Jencks Act materials are produced simultaneously, shortly before trial. This practice has been widely held to be sufficient to satisfy the requirement that *Giglio* be produced "in sufficient time that the defendant will have a reasonable opportunity to act upon the information efficaciously." *United States v. Rodriguez*, 496 F.3d 221, 226 (2d Cir. 2007); *United States v. Jacques Dessange, Inc.*, 2009 WL 280050, at *9 (S.D.N.Y. Mar. 14, 2000) ("*Giglio* material is customarily produced in this District with Section 3500 material."); *United States v. Hernandez*, 2010 WL 26544, at *6 (S.D.N.Y. Jan. 6, 2010) (declining to order immediate disclosure of *Giglio*, as the Government stated it would provide both *Giglio* and Jencks Act material "shortly before trial"); *United States v. Davis*, 2009 WL 637164, at *14 (S.D.N.Y. Mar. 11, 2009) ("The Second Circuit has held that a request for immediate or early disclosure [of *Giglio* material] has no basis in the law.").

Following the ordinary practice in this District, the Government intends to produce *Giglio* and Jencks Act material no later than one week before trial or as otherwise ordered by the Court.[2]

### B. The Court Should Set Reasonable Deadlines for Production of Exhibit and Witness Lists

The defendant also asks the Court for an order directing "the government to provide exhibit and witness lists by a date that will enable him to make effective use of the materials at trial." Def. Br. 9. As a general proposition, the Government has no opposition to making timely production of exhibit and witness lists. The defendant does not say, however, what he believes to be a reasonable schedule. Given that this matter is relatively straightforward, the Government proposes that preliminary exhibit and witness lists be disclosed by both parties two weeks before trial. We

---

[2]     The Government notes that it has already produced certain § 3500 materials as part of discovery. As for the defendant's request for an order directing the Government to preserve "rough notes made by agents during witness interviews," Def. Br. 10, the relevant agents have been instructed to preserve these and other materials for trial.

believe this timing is reasonable and in accordance with other cases in this District.  *See, e.g.*,
*United States v. Scott*, 17 Cr. 630 (ER), July 16, 2019 Pretrial Conference Tr., Dkt. No. 104, at 12-
13 (ordering disclosure of exhibit and witness lists two weeks before trial in complex money
laundering case involving laundering hundreds of millions of dollars in multi-billion dollar fraud).

### C. Rule 16(a)(1) Does Not Support Defendant's Request for Disclosure of Non-Testifying Witness Statements

Citing no authority, the defendant asks the Court "to direct the government to produce the
written statements of individuals that it will *not* be calling as witnesses during trial," claiming that
such "statements are discoverable under Fed. R. Crim P. 16(a)(1)."  Def. Br. 9 (emphasis added).
The defendant does not say why he believes such information is discoverable, or even what part
of the rule he believes is applicable.  Assuming, however, that he is relying on Rule 16(a)(1)(E)(i),
the defendant would only be entitled to items that are "material to preparing the defense."  As
discussed above, the Government is aware of its discovery obligations, including with respect to
*Brady* and *Giglio*, and has complied with, and will continue to comply with, those obligations.
Consistent with this understanding, to the extent the Government comes into possession of written
statements of individuals that it will not be calling as witnesses at trial that would fall within the
ambit of *Brady* or *Giglio* for witnesses the Government is calling, the Government will produce
them.  The defendant, however, is not entitled to an order requiring the hypothetical production of
unspecified documents.  *See United States v. Jenkins*, 2017 WL 3283859, at *5 (W.D.N.Y. Aug. 2,
2017) (denying request to order production of "non-testifying witness statements" where
Government represented it was in compliance with discovery obligations).

### D. The Court Should Order Disclosure of Rule 404(b) Evidence By the Deadline for Filing Motions *In Limine*

By its terms, Rule 404(b) requires the Government to provide "reasonable notice" of evidence relating to other crimes, wrongs, or acts that it intends to offer at trial. *See* FED. R. EVID. 404(b)(3)(A). What constitutes reasonable notice depends upon the circumstances of the particular case. *See United States v. Kevin*, 1999 WL 194749, at *13 (S.D.N.Y. April 7, 1999). "Courts in this Circuit have held that two or three weeks' notice is reasonable[, and] a longer period may be appropriate, depending on the circumstances." *United States v. Sezanayev*, 2018 WL 2324077, at *8 (S.D.N.Y. May 22, 2018) (rejecting request to order 404(b) disclosures 60 days before trial).

In his papers, the defendant requests that the Court "require the government to disclose any evidence it intends to offer under Rule 404(b) at least sixty days before trial." Def. Br. 10. The defendant offers no special circumstances that would justify such early disclosure. *See United States v. Goode*, 2018 WL 919928, at *17 (S.D.N.Y. Feb. 15, 2018) (observing that "[s]ixty days is a significant amount of time and thus inappropriate," and setting a 404(b) deadline 30 days before trial.). Instead, the Government respectfully requests that the Court set a schedule requiring production of Rule 404(b) materials consistent with the deadline to be set for motions *in limine*, which is reasonable and in line with other cases in this District. *See United States v. Ware*, 2007 WL 2319125, at *1 (S.D.N.Y. Aug. 10, 2007) (approving Government proposal to provide notice of Rule 404(b) notice by the deadline for the filing of *in limine* motions); *United States v. Murgio*, 209 F. Supp. 3d 698, 726 (S.D.N.Y. 2016) (similar).

## IV. The Government Takes No Position on the Defendant's Request to Alter His Bond

In addition to his pretrial motions, the defendant asks the Court to "correct" the conditions of his bond "to remove the condition requiring [him to] continue or seek employment." Def. Br.

12. The Government takes no position on this request, and defers to the Court and Pretrial Services as to whether this condition is necessary and appropriate. The defendant is correct that, during his presentment in this District, the Government proposed a list of agreed upon bond conditions, which were generally consistent with those entered on his initial release in the District of Nevada and did not include an express requirement that the defendant continue or seek employment. *Id.* at 1-2. The defendant is also correct that the bond entered does include this requirement. *Id.* Ex. D.

Although the defendant's employment was not expressly discussed, other conditions of his release plainly reflect the parties' understanding that the defendant was actively employed and anticipated continued employment while on release. For example, in discussing his travel restrictions, the Government provided "that the defendant may travel to other districts for business purposes with pre-approval from Pretrial Services." Def. Br. Ex. B at 10. And in discussing limitations on his ability to receive large sums of money from third parties, the Government expressly excepted "paychecks or employment compensation received from LV.Net." *Id.* at 11. Moreover, the defendant appears to still be employed by LV.net: As he acknowledges, he was the founder and president of LV.net, and despite taking a leave of absence since his arrest, he has still been "consulting and is active on a daily basis." Def. Br. 12. It thus appears that he is compliance with the employment condition of his bond, and the Government has not been made aware of any anticipated future difficulties in so complying.

## V.   The Defendant Should Not Be Permitted to Make Further Motions Contemplated in Rule 12(b)(3)

At the conclusion of his papers, the defendant requests blanket permission to make unspecified additional motions before trial, citing the voluminous discovery produced to date and the possibility that further discovery will be produced in the future. *See* Def. Br. 13. The

Government produced the bulk of discovery in this matter in January 2023 and its last substantial production was in early April 2023.  The defendant has thus had these materials for months, including before asking for the current motions schedule at the May 30, 2023 conference.  He should not be permitted to make any further motions of the type contemplated in Federal Rule of Criminal Procedure 12(b)(3) based on information that he had in his possession before his current motions were made.  As that rule provides, such motions "must be raised by pretrial motion if the basis for the motion is then reasonably available."  FED. R. CRIM. P. 12(b)(3).[3]  Any motions *in limine* should be made in accordance with a schedule to be set by the Court.

## CONCLUSION

For these reasons, the Government respectfully requests that the Court deny the defendant's motions and set pretrial deadlines in accordance with the common practices in this District.

Dated: White Plains, New York
          August 29, 2023

                              Respectfully submitted,

                              DAMIAN WILLIAMS
                              United States Attorney
                              Southern District of New York


                    by: __/s/ Benjamin Klein_____
                              Benjamin Klein / Emily Deininger
                              Assistant United States Attorneys
                              (914) 993-1940 / (212) 637-2472

---

[3]      To the extent the defendant comes to believe that some future discovery or newly obtained information provides a new basis for motion practice, such a motion may be appropriate, although the Government respectfully submits that he should seek leave of the Court.

24