UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
UNITED STATES OF AMERICA,

                                                    Case No.: 22-CR-650 (JPO)


                          -against-


MARTIN MIZRAHI,

                                              Defendant.
------------------------------------------------------------------------X


## DEFENDANT MIZRAHI'S OPPOSITION TO
## GOVERNMENT'S MOTIONS *IN LIMINE*


Richard Portale, Esq.
Chad Mair, Esq.
Louis Fasulo, Esq.
Portale Randazzo LLP
245 Main Street, Suite 605
White Plains, New York 10601

*Attorneys for the Defendant Martin Mizrahi*

# **Table of Contents**

PRELIMINARY STATEMENT ............................................................................................. 2

BACKGROUND .................................................................................................................... 3

   I.   PROCEDURAL HISTORY ........................................................................................ 3

ARGUMENT ........................................................................................................................ 4

   I.   THE GOVERNMENT'S MOTIONS TO ADMIT CO-CONSPIRATOR
STATEMENTS SHOULD BE DENIED ............................................................................. 4

      A.   Applicable Law ................................................................................................... 4

      B.   Discussion ........................................................................................................... 8

        1.   The Government fails to sufficiently detail the necessary elements for This Court
to make a particularized finding on each statement under FRE 801 ........................... 8

        2.   The Government Cannot Establish the Existence of the Conspiracy or Mr.
Mizrahi's Membership ................................................................................................... 9

   II.   THE GOVERNMENT'S MOTION TO ADMIT "OTHER ACT" EVIDENCE
SHOULD BE DENIED ...................................................................................................... 12

      A.   Applicable Law ................................................................................................. 12

      B.   Discussion ......................................................................................................... 13

   III.   THE GOVERNMENT'S MOTIONS TO PRECLUDE EVIDENCE OR
ARGUMENT ABOUT HOW PURPORTED VICTIMS FARED ECONOMICALLY
SHOULD BE DENIED ...................................................................................................... 18

      A.   Applicable Law ................................................................................................. 18

      B.   Discussion ......................................................................................................... 18

   IV.   THE GOVERNMENT'S MOTIONS TO PRECLUDE EVIDENCE REGARDING
LV.NET SHOULD BE DENIED ....................................................................................... 19

   V.   THE GOVERNMENT'S MOTIONS TO PREVENT THE DEFENSE FROM
CROSS-EXAMINING CW-1 AND CW-2 ON CERTAIN MATTERS SHOULD BE
DENIED ............................................................................................................................ 20

   VI.   THE GOVERNMENT'S MOTIONS TO PREVENT THE DEFENSE FROM
PRESENTING EVIDENCE ABOUT MR. MIZRAHI SHOULD BE DENIED .............. 22

CONCLUSION .................................................................................................................... 23

## <u>PRELIMINARY STATEMENT</u>

Defendant Martin Mizrahi respectfully submits this opposition to the Government's motions *in limine* ("Motion"). Dkt. 76. The Government's motions *in limine* should be denied, as they are unfounded and overbroad, or premature.[1] Motions *in limine* are meant to allow the court to address in advance of trial questions of admissibility of proffered evidence. They should not be a vehicle to subject the defendant to trial on uncharged and unsubstantiated bad acts, attempt to prevent a defendant from mounting a defense, or obtain advisory rulings on speculative legal and evidentiary issues based on an undeveloped factual record. But that is precisely what the Government's motions *in limine* attempt to accomplish here.

---

[1] The Defense takes no position on the Government's fourth motion *in limine* (the Court should admit statements made by LV.net's in-house counsel. The motion is the third listed in the Government's table of contents, but the fourth motion in the body of its filing).

## BACKGROUND

Mr. Mizrahi is charged by superseding indictment with conspiracy to commit wire fraud and bank fraud, wire fraud, bank fraud, conspiracy to commit money laundering, money laundering, aggravated identify theft and conspiracy to operate an unlicensed money transmitting business. The trial of Mr. Mizrahi is scheduled to commence on February 14, 2024.

### I.   PROCEDURAL HISTORY

On January 18, 2024, the Government served upon the defense its Motions *in Limine* ("Motion"). The Government seeks pretrial rulings on seven matters:

(1) admit out-of-court statements made by Mizrahi's co-conspirators pursuant to Federal Rule of Evidence 801(d)(2)(E);

(2) admit evidence of Mizrahi's involvement in recovering bulk cash narcotics proceeds stolen from CW-1 as direct evidence of the charged offenses, or, alternatively, under Federal Rule of Evidence 404(b);

(3) admit out-of-court statements made by in-house counsel for LV.Net, Mizrahi's wholly-owned business, pursuant to Federal Rule of Evidence 801(d)(2);

(4) exclude evidence or argument that victims of the fraud schemes did not suffer pecuniary losses, including that a portion of the fraud proceeds were ultimately recovered;

(5) preclude evidence that Mizrahi failed to engage in fraud with respect to other LV.Net customers;

(6) preclude cross-examination of two cooperating Government witnesses about matters that do not go to credibility; and

(7) preclude irrelevant evidence of the defendant's personal circumstances and potential punishment.

## ARGUMENT

### I.    THE GOVERNMENT'S MOTIONS TO ADMIT CO-CONSPIRATOR STATEMENTS SHOULD BE DENIED

The Government seeks a pretrial ruling to admit certain statements alleged to have been made by co-conspirators in furtherance of the charged conspiracies under Federal Rules of Evidence Rule 801(d)(2)(E). Motion, pp. 4-13. However, the Government failed to identify each particular statement, and improperly asks this Court to make a generalized, blanket ruling on categories or topics of proposed testimony. Mr. Mizrahi is substantially prejudiced by the Government's improper application here, where the specific statements the Government expects to elicit from each witness have not been identified. The Government is well aware of its obligation to provide particularized statements to allow this Honorable Court to make individualized rulings, yet still burdens this Honorable Court and prejudices Mr. Mizrahi with this inappropriate application. Accordingly, this Court should deny the Government's motion entirely, or, in the alternative, reserve its ruling unless and until the Government offers each specific statement, and this Honorable Court makes an individualized ruling on each statement after considering the Federal Rules of Evidence and *Bourjaily* factors. *See* Fed. R. Evid. 801(d)(2)(E); *Bourjaily v. United States*, 483 U.S. 171 (1987).

#### A.  Applicable Law

The Federal Rules of Evidence provide an exception to the general prohibition on hearsay by permitting a statement offered against an "opposing party" and where the statement "was made by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). For a statement to qualify under the coconspirator exception, the Government must establish by a preponderance of the evidence that (1) a conspiracy existed; (2) the defendant and the declarant were members of the conspiracy; (3) the statement was made in the course of the

conspiracy; and (4) the statement was made in furtherance of the conspiracy. *Bourjaily*, 483 U.S. at 175 ("The preponderance standard ensures that before admitting evidence, the court will have found it more likely than not that the technical issues and policy concerns addressed by the Federal Rules of Evidence have been afforded due consideration").

It should be made clear that to admit "co-conspirator statements," the court "in each instance must find the existence [between the defendant and the declarant] of a specific criminal conspiracy [to do that criminal act.]" *United States v. Russo*, 302 F.3d 37 (2d Cir. 2002), *citing United States v. Gigante,* 166 F.3d 75, 82 (2d Cir. 1999). Co-conspirator statements are inadmissible when the speaker and the defendant were not jointly engaged in the criminal venture that was being advanced by the speaker. *Russo*, 302 F.3d at 44; ("[A] declarant's statement made in furtherance of a criminal act...is not admissible against the defendant under the co-conspirator exception unless the defendant was associated with the declarant in a conspiracy or joint venture having that criminal act as its objective.") Further, "[a]n association between the defendant and the declarant in some other venture...will not suffice." *Id*.

The "in furtherance of" requirement of Rule 801 stems from the long-standing doctrine that the admissibility of statements by co-conspirators is partly attributable to the concept of co-conspirators as agents for each other. Therefore, the admissibility of statements they make should derive, on the one hand, from their ability to act on behalf of other co-conspirators, and, on the other hand, the limitations of their authority to act truly as agents. *Van Riper v. United States*, 13 F.2d, 961, 967 (2d Cir.) cert. den. 273 U.S. 702, 47 S.Ct. 102, 71 L.Ed. 848 (1926) (L. Hand, J.). *See, generally*, *Weinstein*, Federal Evidence, 801(d)(2)(E)[01], p. 801-308, *et. seq*. Judge Weinstein notes that it was necessary to preserve the "in furtherance of the conspiracy" requirement in Rule 801 as a means necessary to protect the defendants from the real dangers of unfairness

posed by conspiracy prosecutions. *Weinstein*, *supra*, 801-310. Judge Weinstein quotes the report of the New Jersey Supreme Court, Committee on Evidence 167 (1963), which stated, among other things:

> The hearsay statements of alleged co-conspirators are perhaps the most suspect of all. To permit criminal convictions to be based on such evidence would indeed be unfair and impractical.

As Judge Weinstein notes,

> The committee's retention of the 'in furtherance' requirement was motivated by a desire to strike a balance between the great need for conspirators' statements in combating undesirable criminal activity which is inherently secretive and difficult to prove, and the need to protect the accused against idle chatter of criminal partners as well as inadvertently misreported and deliberately fabricated evidence.

*Weinstein*, *supra*, p. 801-311.

Judge Weinstein also quotes from *Krulewitch v. United States*, 336 U.S. 440, 443-44, 69 S.Ct. 716, 718, 93 L.Ed. 790, 794 (1949), where the Supreme Court noted:

> This prerequisite to admissibility, that hearsay statements by some conspirators to be admissible against others must be made in furtherance of the conspiracy charged, has been scrupulously observed by federal court.

*Weinstein*, *supra*, p. 801-312. In *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The Supreme Court again stated that,

> We have consistently refused to broaden that very narrow exception to the traditional hearsay rule which admits statements of a co-defendant made in furtherance of a conspiracy or joint undertaking.

*See also, Dutton v. Evans*, 400 U.S. 74, 81, 91 S.Ct. 210, 215, 27 L.Ed.2d 213, 222.

Judge Weinstein acknowledges that some court decisions appear to ignore this distinction, but that in many cases it may be attributable to the failure of the attorneys and courts to thoroughly analyze the statements. *Weinstein*, supra, p. 801-316. Judge Weinstein concludes,

> The adoption of rule 801(d)(2)(E) and the rejection of the model code - uniform rule approach should be viewed as mandating a construction of the 'in furtherance' requirement protective of defendants, particularly since the Advisory Committee was concerned lest relaxation of this standard lead to the admission of less reliable evidence. Narrative declaration should not be admitted as a matter of course and statements of confession should be carefully scrutinized.

*Weinstein*, supra, p. 801-316. *See, United States v. Lang*, 589 F.2d 92, 99-100 (2d Cir. 1978); *United States v. Smith*, 578 F.2d 1227, 1232 n. 8 (8th Cir. 1978); *United States v. Moore*, 522 F.2d 1068, 1077, n. 5 (9th Cir. 1975), cert. den. 423 U.S. 1049 96 S.Ct. 775, 46 L.Ed.2d 637 (1976) ("casual admission of culpability" in no way furthered conspiracy or in any way assisted in achieving the conspirator's objectives.)

To this end, narratives of past events are not "in furtherance of" a conspiracy. As Judge Weinstein's treatise point out, many courts have been careful to exclude mere narratives as statements "in furtherance of the conspiracy" unless other clear indications exist that the narrative of past events is necessary to further the purpose of the conspiracy. Thus, recounting by one of the co-defendants of past events or conduct on the part of any of the co-conspirators is not a declaration in furtherance of the conspiracy. *United States v. Tarantino*, 846 F.2d 1384, 1412 (D.C. Cir. 1988); *United States v. Birnbaum*, 337 F.2d 490, 494-95 (2d Cir. 1964); *United States v. Foster*, 711 F.2d 871, 880 (9th Cir. 1983); *United States v. Eubanks*, 591 F.2d 513, 520 (9th Cir. 1979); *United States v. Wolff*, 839 F.2d 1387, 1395 (10th Cir. 1988); *United States v. Perholtz*, 842 F.2d 243, 356-57 D.C. Cir., cert. den., 109 S.Ct. 65, 102 L.Ed.2d 42 (1988) and ("during a subsequent period

when the conspirators were engaged in nothing more than concealment of the criminal enterprise"
statements were not admissible as in further of the conspiracy); *United States v. Badalamenti*, 626
F.Supp. 658, 662 (S.D.N.Y. 1986) ("statement was more like narrative gossip" and was therefore
inadmissible); *United States v. Bibbero*, 79 F.2d 581, 583-85 (9th Cir. 1984), cert. den., 471 U.S.
1103, 105 S.Ct. 2330, 85 L.Ed.2d 847 (1985) (mere conversation between conspirators is not
admissible); *United States v. Fielding*, 630 F.2d 1357, 1364-66 (9th Cir. 1980) (error to admit
narratives of past events, puffing statements made to induce participation in new conspiracy and
statements made to get help in collecting money owed; statements were in furtherance of
declarant's purpose but not that of the conspiracy); *United States v. Kessler*, 530 F.2d 1246, 1256
n. 16 (5th Cir. 1976) (this declarant was on a "frolic of his own" which did not amount to
furtherance of the conspiracy); *United States v. Nazemian*, 948 F.2d 522 (9th Cir. 1991) (while part
of statement was intended to facilitate an objective, a portion of a statement concerning defendant
was purely historical and has no connection or purpose related to the conspiracy. The district court
finding that statement was in furtherance of conspiracy was clearly erroneous.).

### B.  Discussion

#### 1.  The Government fails to sufficiently detail the necessary elements for This Court to make a particularized finding on each statement under FRE 801

The Government's submission, in each instance, does not identify (1) the declarant, (2) the
conspiracy in which the declarant is a member, (3) the date of the statement, (4) with whom the
declarant is speaking, (5) whether the listener or receiver is a co-conspirator, (6) whether the
statement is oral or written, (7) the witness that will testify about the statement (raising potential
Rule 805 issues), (8) whether Mr. Mizrahi was a member of the conspiracy at the time the
statement was made, (9) whether the conspiracy existed at the time the statement was made, (10)

whether the statement was made in furtherance of the conspiracy, and most importantly, (11) the actual statement.

The Government's choice not to disclose the individualized statements should be fatal to its motion. Because the Government's "categories" of statements are insufficient to conduct a *Bourjaily* analysis, and because there is no rule permitting the admission of general categories of statements, the Government's motion should be denied in its entirety. Should this Court not summarily deny the Government's motion, it should require the Government to identify each individual statement. Should this Court reserve its ruling, the defense reserves its right to re-raise these objections and raise further and other objections it deems necessary.

### 2. The Government Cannot Establish the Existence of the Conspiracy or Mr. Mizrahi's Membership

The Government cannot seek the admission of the hearsay statements of any alleged co-conspirators prior to establishing that a conspiracy existed and that Mr. Mizrahi was a member. At this point, the Government has not established the existence of a conspiracy and therefore its motion is premature. The Government must be required to establish, by a preponderance of the evidence, the existence of the conspiracy and Mr. Mizrahi's membership in that conspiracy before making the application to introduce the hearsay evidence sought by the Government.

Much of the anticipated evidence set forth by the Government in its motion *in limine* does not support that Mr. Mizrahi was participating in a conspiracy. None of the categories of statements for which the Government seeks an order permitting their admission (Motion, p. 15) concern Mr. Mizrahi's participation and membership in a conspiracy and are thus inadmissible until a conspiracy is proved.

To be sure, based on the evidence referred to in the Government's motion *in limine*, the Government cannot prove the requisite elements of Mr. Mizrahi's membership in a conspiracy in

order to admit the otherwise inadmissible hearsay evidence. The Government's expected evidence is little more than the testimony of two unreliable alleged coconspirators about the very hearsay statements that the Government seeks to introduce and speculative conclusions about the actions of Mr. Mizrahi. Over four pages of "relevant facts" in its Motion (pp. 4-7), the Government does not point to a single item of evidence evincing that Mr. Mizrahi was a member of the conspiracies alleged.

To the contrary, the Defense expects that the evidence will show the following:

- CW-1 is a conniving con man who groomed Mr. Mizrahi.

- Mr. Mizrahi has a largely unmatched work ethic and is engaged in numerous, simultaneous business deals.

- Contrary to the allegations of the Government, Mr. Mizrahi's business, LV.net, is not solely an internet service provider. The LV.net business model includes, but is not limited to, setting up and wiring solar plants, hosting cryptocurrency miners, hosting internet facilities for other companies (AKA co-location), and commercial real estate holdings.

- Mr. Mizrahi often engaged in "handshake" agreements, even for large-scale projects.

- Mr. Mizrahi was engaged in mining, buying, and selling Bitcoin as a hobby.

- Mr. Mizrahi declared the Bitcoin transactions on his personal taxes (IRS Schedule 8949).

- It is not illegal to sell Bitcoin for cash. Cash is legal tender. The Government's premise that Mr. Mizrahi knew the source of the funds, if they were indeed bulk cash narcotics proceeds (indeed, CW-1 maintained that he did not know the money was illicit for the duration of his proffer to the FBI in December 2022), is entirely unsubstantiated (Motion, pp. 14-15).

- Mr. Mizrahi was actively engaged in a project called a CREIT (Cryptocurrency Real Estate Investment Trust) on behalf of LV.net. He was soliciting investors, obtaining land/buildings and machinery for the project—at the same time the credit card charges at issue here were made. The credit card holders were billed as investors by CW-1.

- Mr. Mizrahi understood that CW-1 was bringing him investors for the CREIT, in part because CW-1 explicitly told him so and had requested a copy of Mr. Mizrahi's project deck to provide to investors.

- Mr. Mizrahi requested and gathered information related to Know-Your-Customer regulations that he forwarded to his comptroller as the comptroller was processing the payments. The invoices created for these charges were consistent with LV.net business models for the type of services that the company provided. Some invoices were created and submitted for signature before the charges were made.

- The invoices were legitimately created by the LV.net comptroller and emailed to Mr. Mizrahi, who then forwarded them to CW-1 for his customers' signatures. CW-1 would email them back to Mr. Mizrahi who passed the signed invoices along to his comptroller for recordkeeping.

In short, there is zero direct evidence that Mr. Mizrahi knew anything about any kind of conspiracy or illicit activity outside of the inadmissible hearsay of CW-1, and perhaps CW-2. This evidence alone cannot establish Mr. Mizrahi's participation in a conspiracy, if one even existed.

The Government's motion to introduce hearsay evidence from alleged co-conspirators should be denied.

## II.   THE GOVERNMENT'S MOTION TO ADMIT "OTHER ACT" EVIDENCE SHOULD BE DENIED

### A.  Applicable Law

Rule 404(b) of the Federal Rules of Evidence governs the admissibility of evidence of other "crimes, wrongs, or acts" that are not charged in the indictment. The rule provides, in relevant part:

> (1) Prohibited Uses. Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

> (2) Permitted Uses. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. *Id*.

Rule 404(b) prohibits the admission of extrinsic evidence to show a defendant's bad character or propensity to commit the charged crime. Fed. R. Evid. 404(b). The Second Circuit follows the "inclusionary" approach regarding admitting evidence under Federal Rule of Evidence 404(b), which admits all "other act" evidence that does not serve the sole purpose of showing the defendant's bad character and that is neither overly prejudicial under Rule 403 nor irrelevant under Rule 402. *United States v Curley*, 639 F.3d 50, 56 (2d Cir. 2011); *United States v. Pascarella*, 84 F.3d 61, 69 (2d Cir.1996). Even under this approach, however, district courts should not presume that such evidence is relevant or admissible. *Curley*, 639 F.3d at 56; *United States v. Halper*, 590 F.2d 422, 432 (2d Cir.1978).

To be admissible under Rule 404(b), "other act" evidence must meet three criteria: (1) it must be offered for a proper purpose; (2) it must be relevant to a disputed issue; and (3) pursuant to Rule 403, the probative value of the evidence cannot be substantially outweighed by its potential for unfair prejudice. *See United States v. Scott*, 677 F.3d 72, 81 (2d Cir. 2012) ("[R]elevance is not the end of the inquiry: evidence admitted under 404(b) must be relevant to an issue *in dispute*.") (emphasis in original). Additionally, at the defendant's request, the district court should give the

jury an appropriate limiting instruction. *United States v. McCallum*, 584 F.3d 471, 475 (2d Cir. 2009) (citing *Huddleston v. United States*, 485 U.S. 681, 691-92 (1988)).

The Government may offer proof of acts not included within the indictment if they are within the scope of the conspiracy. *United States v. Cummings*, 60 F. Supp. 3d 434, 437 (SDNY 2014) (internal quotation marks and citations omitted), vacated on other grounds 858 F.3d 763 (2d Cir. 2017).

Even if admissible under Rule 404(b), the inquiry does not stop there. Evidence may also be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. It is thus proper to exclude relevant evidence under Rule 403 where, among other things, its admission would require "mini-trials" on collateral issues, which "may mislead the jury and lead it to convict [the] defendant for uncharged conduct." *United States v. Ulbricht*, 79 F. Supp. 3d 466, 492–93 (SDNY 2015).

## B.  Discussion

The Government indicates its intention to offer evidence of three separate instances where, according to CW-1, Mr. Mizrahi allegedly threatened to collect money or did collect money from individuals to whom CW-1 was indebted or individuals whom CW-1 claimed had stolen money from him, either as direct evidence of the charged conspiracy or as other acts evidence pursuant to Rule 404(b). The Government's arguments fail on both counts. Similarly, the proper application of Rule 403 precludes this evidence from being introduced.

*Instance One*

The Government's attempt to introduce evidence that, on some unknown date several years before the events alleged in the instant indictment, Mr. Mizrahi allegedly offered to "straighten out" some unknown "investor" because CW-1 allegedly became indebted to him is not admissible

under any of the mechanisms set forth by the Government. There has been no claim made that Mr. Mizrahi ever followed through or took even a single step related to this story.

The Government has not provided any factual basis for such a spurious allegation. In the absence of more concrete information about this event, the Defense is left to guess as to what the evidence is and effectively unable to prepare for or respond to the evidence. This is prejudicial and the Government motion should be denied on this basis alone.

The Government is merely attempting to portray Mr. Mizrahi as a violent individual. This event, apparently based on nothing more than the fanciful stories of an unreliable fraudster, CW-1, has no connection to the crimes charged in the Superseding Indictment. It is not remotely related to or necessary to complete the story of the crime on trial. *See United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2009). The conspiracies charged by the Government here concern wire fraud, bank fraud, money laundering, and operating unlicensed money transmitting businesses. *Superseding Indictment,* Cts. 1, 4, 7. Mr. Mizrahi's unsubstantiated "offer" to "straighten out" an unnamed individual to whom CW-1 owed money is entirely unrelated to those charges and contributes nothing to the jury's understanding of the charges in this case. Even if true, Mr. Mizrahi offering to collect money from an investor of CW-1 is merely a personal favor to CW-1.

To the sure, the evidence is clearly inadmissible under Rule 403, as any probative value of the evidence is "substantially outweighed" by the unfair prejudice that would result flow from such evidence. Fed. R. Evid. 403. The evidence would serve little more than to paint Mr. Mizrahi as a violent, aggressive individual without any basis for doing so.

*Instances Two and Three*

The second and third events for which the Government seek to introduce evidence of other acts similarly fail the requisite admissibility standards and should be denied. The Government

unconvincingly attempts to connect two entirely unrelated events to the conspiracy charged here. *United States v. Nektalov*, 325 F. Supp. 2d 367, 370 (SDNY 2004) (Evidence of uncharged conduct may be admitted as direct proof of the charged conduct rather than "other act" evidence under Rule 404(b) "if it [1] arose out of the same transaction or series of transactions as the charged offense, [2] if it is inextricably intertwined with the evidence regarding the charged offense, or [3] if it is necessary to complete the story of the crime on trial." (quoting *Carboni*, 204 F.3d at 44).

The Government first refers to an allegation that CW-1 approached Mr. Mizrahi for help in recovering funds that CC-4[2] purportedly stole. According to the Government, CW-1 explained that the stolen funds belonged to Mexican cartels (in the plural) and that CW-1 was in fear for his life. Motion, p. 14. Mr. Mizrahi purportedly agreed to assist in recovering the funds.

The Government further alleges that an associate of Mr. Mizrahi, CC-5, made an agreement (entirely independently of Mr. Mizrahi) to deliver Bitcoin for cash. After CC-5 failed to provide the Bitcoin and kept the cash, CW-1 enlisted Mr. Mizrahi to help recover the money. Motion, pp. 14-15. According to CW-1, Mr. Mizrahi told him that Mr. Mizrahi recovered part of the funds by forcibly taking CC-5's girlfriend. Motion, p. 15.

The obvious and fatal flaw in the Government's position is that neither CC-4 nor CC-5 were co-conspirators.[3] Both CC-4 and CC-5 were thieves who perpetrated frauds on CW-1, who was attempting to move cash and make money. First, both individuals were "first-timers"—neither had a history of selling Bitcoin to CW-1. It cannot be established by a preponderance of the evidence that either CC-4 or CC-5 were ever going to further the objectives of the conspiracy. Indeed, in the case of CC-4, as soon as he received the funds from CW-1, he started ignoring CW-

---

[2] The Government refers to CC-4 and CC-5, but without defining the acronym "CC". Assuming "CC" stands for "co-conspirator", these individuals are not co-conspirators, as discussed *infra*.

[3] Nor, for that matter, the unnamed individual in the first instance. There is no connection asserted between the unnamed "investor" and the conspiracy alleged here.

1 and never engaged him again. CC-5 literally took the money and ran. Clearly no meeting of the minds took place between CW-1 and either individual to conceal unlawful proceeds. To the extent that Mr. Mizrahi took any steps to assist CW-1 in recovering the stolen funds from either CC-4 or CC-5, such acts were personal favors and not in furtherance of the conspiracy.

For the instance involving CC-4, the acts alleged are also inadmissible under any of the exceptions in Rule 404(b). The Government alleges that after CC-4 failed to remit cryptocurrency in exchange for cash provided by CW-1, CW-1 "enlisted [Mr. Mizrahi's] assistance in recovering the money". Motion, p. 14. While the Government alleges that Mr. Mizrahi "agreed" (Motion, p. 14), the Government states only that this assistance was that Mr. Mizrahi "had left messages for CC-4." Motion, p. 15. "Leaving messages" does nothing to assist the Government in "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b).

Instead, the Government is thus attempting to use these alleged other acts as a vehicle to admit impermissible hearsay evidence—and extremely prejudicial evidence at that—in through the side door. To explain this event, the Government goes to great lengths to explain the source of the cash is Mexican cartels. Motion, p. 14. Even if true, that would not prove that other cash provided by CW-1 was from Mexican cartels or that the funds were illicit in any way. *Contra*, Motion, p. 22. To allow the Government to introduce such evidence would unfairly prejudice Mr. Mizrahi and tend to mislead the jury. Fed. R. Evid. 403. The evidence regarding CC-4 should not be admitted.

The proposed evidence regarding CC-5 is similarly inadmissible under Rule 403.

The Government attempts to corroborate the story regarding CC-5 by reference to October 2021 text messages—some five to six months after the alleged events took place. The text

messages are unreliable and inadmissible. The text string referred to by the Government is a one-sided chat, with only half of the conversation present. The responses from Mr. Mizrahi referred to by the Government (Motion, p. 16) are in what appear to be "replies" by CW-1. This fails the "best evidence" test, as the original messages are not available for review and authenticity. *See*, *United States v. Jackson*, 488 F. Supp. 2d. 866, 871 (Neb. DC 2007) (missing data on a document purporting to show chats creates doubt as to the trustworthiness of the document, as well as failing to satisfy the requirements of Fed. R. Evid. 1002 and 1004). Furthermore, by only containing half of the conversation, the text messages lack context and completeness. They are inadmissible.

Even assuming *arguendo* that a conspiracy existed, the purported exchange between CW-1 and Mr. Mizrahi occurred four months after the Government alleges the conspiracy ended. Indictment Counts. 1, 4, and 7 allege June 2021 as the end date of the alleged conspiracy. In fact, aside from idle chatter, there is very little communication between Mr. Mizrahi and CW-1 after August 2021, there is not a single sale of Bitcoin to CW-1 after June 9, 2021, and the last credit card transaction processed by Mr. Mizrahi's comptroller occurred on June 11, 2021. The messages, then, are not admissible under Rule 801(d)(2)(E) as statements of a co-conspirator as they are idle chatter occurring well after the conspiracy ended (*United States v. Urbanik*, 801 F.2d 692, 698 (4th Cir. 1986) (idle conversation, even if it touches upon a conspiracy, but does not "further" it should not be admitted under Rule 801(d)(2)(E)) as not in furtherance of the conspiracy. *See Moore*, 522 F.2d at 1077, n. 5 ("casual admission of culpability" in no way furthered conspiracy or in any way assisted in achieving the conspirator's objectives); *see also*, *Tarantino*, 846 F.2d 1384 at 1412 (recounting by one of the co-defendants of past events or conduct on the part of any of the co-conspirators is not a declaration in furtherance of the conspiracy); *Badalamenti*, 626

F.Supp. at 662 ("statement was more like narrative gossip" and was therefore inadmissible); *Bibbero*, 79 F.2d at 583-85 (mere conversation between conspirators is not admissible).

In short, the Government's "other acts" evidence fail to overcome the protections granted by Rule 403 and are not admissible under Rule 801(d)(2)(E). The prejudice of the Government painting Mr. Mizrahi as an enforcer for a cartel who threatens and kidnaps individuals cannot be understated in a case involving Bitcoin transactions and credit card charges. If any of the nonsensical events happened, the Government could call CC-4 and CC-5 to explain what happened, rather than rely on the unreliable testimony of cooperating witnesses who were not present for the events for which the Government seeks to have them testify about.

### III.  THE GOVERNMENT'S MOTIONS TO PRECLUDE EVIDENCE OR ARGUMENT ABOUT HOW PURPORTED VICTIMS FARED ECONOMICALLY SHOULD BE DENIED

#### A.  Applicable Law

The right to "an opportunity to be heard in [one's] defense" is among "the most basic ingredients of due process." *Washington v. Texas*, 388 U.S. 14, 18, 87 S. Ct. 1920, 1923, 18 L. Ed. 1909 (1967) (internal quotation marks and citation omitted). The Government's requests are therefore improper and should be denied because they would infringe on Mr. Mizrahi's fundamental "right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies." *See Washington*, 388 U.S. at 18, 87 S. Ct. at 1923, 18 L. Ed. 1909.

#### B.  Discussion

The Government seeks to preclude the Defense from presenting evidence or making arguments about credit card charges being reversed or refunded, as "[p]ecuniary loss is not an

element of wire fraud, wire fraud conspiracy, bank fraud, or bank fraud conspiracy." Motion, p. 27.

In its attempt to prevent the Defense from presenting its case, the Government argument misses the point. The evidence of the credit card charges being reversed or refunded is not to show the lack of pecuniary loss to cardholders. The evidence regarding customer chargebacks, disputes, and refunds are necessary to complete the narrative of what happened in this case. They are relevant to Mr. Mizrahi's state of mind (*see*, Fed. R. Evid. 803(3))*,* as they reveal that Mr. Mizrahi did not know that the customers or investors were either fake or were themselves being scammed.

Additionally, it is noteworthy that the Government argument is premised on preventing evidence or argument about how the "victims" fared economically. The proffer statements of both CW-1 and CW-2 indicate that many of the credit card holders were not victims, but were instead complicit in the scheme perpetrated by CW-1. Thus, the evidence of any disputes, as well as any refunds or chargebacks, are directly relevant to how the alleged scheme worked and how Mr. Mizrahi was led to believe that the card holders were legitimate investors.

If requested by the Government at the appropriate time, a limiting instruction on the use of such evidence may be appropriate, but the wholesale preclusion of such evidence is extreme and unwarranted. The Government motion should be denied.

### IV.    THE   GOVERNMENT'S   MOTIONS   TO   PRECLUDE   EVIDENCE REGARDING LV.NET SHOULD BE DENIED

Once again, the Government's attempt to preclude the Defense from presenting its case should be denied. The Government asserts that evidence of the legitimate business activities of LV.net are inadmissible to "show that he lacked fraudulent intent with respect to the conduct at issue in this case." Motion, p. 33.

The evidence of the activities of LV.net is relevant for two purposes. First, the normal business practices of LV.net are entirely relevant to show that the activities conducted by Mr. Mizrahi in relation to the charged conduct were not out of line with how LV.net conducted business and maintained records. Importantly, the Government's own cooperating witnesses have stated to the FBI that the perpetrators of the scheme were looking for legitimate businessmen through which they could make use credit card machines and bank accounts. Mr. Mizrahi fit that profile and CW-1 hooked him. Second, the activities of LV.net will demonstrate that Mr. Mizrahi was in the process of seeking investors for a number of projects in line with the business model of LV.net.

In other words, contrary to the Government's position, the evidence related to LV.net business practices is not being introduced to establish that LV.net did not defraud other customers. It is necessary and relevant to complete the narrative and allow Mr. Mizrahi to present his version events through the evidence. The Government's attempt to preclude this relevant evidence should be denied.

## V.     THE GOVERNMENT'S MOTIONS TO PREVENT THE DEFENSE FROM CROSS-EXAMINING CW-1 AND CW-2 ON CERTAIN MATTERS SHOULD BE DENIED

The Government seeks to prevent the Defense from cross-examining CW-1 and CW-2 on matters that do not go to their credibility. The Defense understands this motion *in limine* by the Government to be limited to the criminal history and other potentially culpable conduct listed at pages 34-36 of its Motion and not a broader motion seeking to limit the cross-examination of the two witnesses. To the extent that the Government seeks to limit the cross-examination of the two witnesses beyond the criminal history and potentially culpable conduct referred to the in the Motion, the Defense reserves the right to address such limitations at a later date.

In any event, the attempt to preclude the Defense from asking questions about any of the topics on pages 34-36 goes too far.

Regarding CW-1, the Government argues that the Court should preclude cross-examination CW-1's convictions of using a check with insufficient funds because more than ten years have passed and it involved no period of confinement. Motion, p. 40. CW-1's credibility will be at the heart of the case against Mr. Mizrahi. CW-1's conviction for passing a bad check is entirely probative to his honesty and credibility, especially where CW-1 is the main bad actor in a series of economic fraud schemes. The Government does not identify any specific prejudice that would arise from questioning CW-1 on this conviction. In fact, any prejudice would be incredibly slight, if at all, when compared to the crimes CW-1 will admit to having orchestrated here. The fact that CW-1 has ample other misconduct does not render this particular conviction cumulative or prejudicial.

CW-1's failure to pay child support is also an appropriate subject for cross-examination in the context of CW-1's credibility. CW-1's failure to pay child support bears directly on his propensity for truthfulness and is analogous to a failure to pay taxes. *See*, *United States v. Whitmore*, 359 F.3d 609, 621-622 (D.C. Cir. 2003) (prohibiting cross-examination on a witness's failure to pay child support was error); *United States v. Schlussel*, 2009 US Dist Lexis 54876, p. 5 (SDNY 2009); *but see*, *United States v. Colon-Ledee*, 786 F. Supp. 2d 461, 463 (P.R. DC 2010) (holding that willfully failing to pay child support does not require proof that the defendant attempted to conceal his assets or engage in some other kind of deceit or false statement and that the conviction therefore does not constitute a crime of dishonesty or false statement within the meaning of Rule 609(a)(2)).

The anticipated evidence of CW-2 includes events he was present at or heard about during the alleged conspiracy time period. CW-2's drug use at the time, and how that may affect his ability to recall those events, is an entirely appropriate line of questioning on cross-examination. The Government cites to *Flythe v. District of Columbia*, 4 F. Supp. 3d 222, 229 [D.D.C. 2014], for the proposition that a witness's use of drugs is highly prejudicial and "may be excluded when the witness' ability to perceive or recall facts is not legitimately at issue." Motion, p. 38. CW-2's ability to recall events and testify accurately about them is at issue in this case. CW-2 was not present at many of the events on which he has given a statement to the FBI, so his ability to recall what he heard or saw after the fact must be fully tested.

## VI.   THE GOVERNMENT'S MOTIONS TO PREVENT THE DEFENSE FROM PRESENTING EVIDENCE ABOUT MR. MIZRAHI SHOULD BE DENIED

The Government's attempt to prevent evidence or argument about his "family background, health, age, pretrial detention, or any other similar factors" (Motion, p. 39) should be denied. Who Mr. Mizrahi is, his experiences and background, and his professional life are not evidence to cast him in a sympathetic light (*see*, Motion, pp. 39-40, *citing United States v. Harris*, 491 F.3d 440, 447-48 (D.C. Cir. 2007)), but to show who Mr. Mizrahi is a person and place context around his mindset and understanding of the events happening around him during the crimes charged. The Government cites no authority for the overbroad pretrial order it seeks. The Government motion should be denied. If there are specific pieces of evidence or argument that are inadmissible, the Government should object at the appropriate time.

## <u>CONCLUSION</u>

For the foregoing reasons, Mr. Mizrahi requests This Honorable Court to deny the Government's motions *in limine* to the extent that they are objected to this in opposition.

Dated: January 25, 2024
       New York, New York

                               Respectfully Submitted,

                               */s/ Richard Portale*
                               Portale Randazzo LLP
                               Richard Portale, Esq.
                               Chad Mair, Esq.
                               Louis Fasulo, Esq.
                               245 Main Street, Suite 605
                               White Plains, New York 10601

                               *Attorneys for the Defendant Martin Mizrahi*