UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

-v-

MARTIN MIZRAHI,
                        Defendant.

22-CR-650 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

    Defendant Martin Mizrahi was convicted by a jury of (i) conspiracy to commit wire fraud and bank fraud; (ii) wire fraud; (iii) bank fraud; (iv) conspiracy to commit money laundering; (v) money laundering; (vi) aggravated identity theft, and (vii) conspiracy to operate an unlicensed money transmitting business.  The crimes related to Mizrahi's involvement in three schemes: a scheme to launder the proceeds of drug cartel sales; an email compromise fraud scheme involving the Brownsville Community Development Corporation; and a multi-million-dollar credit card fraud scheme.

    Mizrahi has moved for a judgment of acquittal or, in the alternative, for a new trial.  (*See* ECF Nos. 139, 140.)  The Government has opposed Mizrahi's motion.  (*See* ECF No. 145.)

**I. Background**

    The Court assumes familiarity with the factual background and evidentiary record from the trial in this case.

    The jury trial was held from February 14 to March 4, 2024.  The jury found Mizrahi guilty on all seven counts.  (Tr. 2277-2278.)  On April 1, 2024, Mizrahi moved for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure.  (ECF Nos. 139, 140.)  Mizrahi moved in the alternative for a new trial pursuant to Rule 33.  (*Id.*)  The Government filed its opposition on April 29, 2024.  (ECF No. 145.)

II.    **Legal Standards**

    A.    **Rule 29**

"To prevail on an insufficiency of the evidence claim under Rule 29, a defendant bears the 'heavy burden' of showing that 'no rational trier of fact could have found all of the elements of the crime beyond a reasonable doubt.'" *United States v. Mensah*, 515 F. App'x 59, 61 (2d Cir. 2013 (summary order) (quoting *United States v. Caracappa*, 614 F.3d 30, 43 (2d Cir. 2010)). When evaluating a Rule 29 motion, courts "review all of the evidence presented at trial in the light most favorable to the government, crediting every inference that the jury might have drawn in favor of the government." *United States v. Walker*, 191 F.3d 326, 333 (2d Cir. 1999) (quotation marks omitted).

    B.    **Rule 33**

Rule 33 motions for a new trial generally "are disfavored in [the Second] Circuit." *United States v. Figueroa*, 421 F. App'x 23, 24 (2d Cir. 2011) (summary order) (quoting *United States v. Gambino*, 59 F.3d 353, 364 (2d Cir. 1995)). "The ultimate test . . . is whether letting a guilty verdict stand would be a manifest injustice." *United States v. Aguiar*, 737 F.3d 251, 264 (2d Cir. 2013) (citation omitted). A Rule 33 motion should be granted only if the court concludes that there is "a real concern that an innocent person may have been convicted." *Id.* at 264 (citation omitted). The Court must balance this against the risk of "wholly usurp[ing]" the province of the jury. *United States v. Polouizzi*, 564 F.3d 142, 162 (2d Cir. 2009) (quotation marks omitted).

III.    **Discussion**

    A.    **Rule 29 Motion**

In advancing his Rule 29 motion, Mizrahi asserts, in conclusory fashion, that the evidence presented at trial was insufficient to establish the elements of each of the charged

offenses, and particularly that it was insufficient to prove that he had the knowledge or intent required by each count. (ECF No. 140 ("Mem.") at 5-7.) In addition, he argues that the evidence was insufficient to establish the elements of the charges relating to money laundering, aggravated identity theft, and operating an unlicensed money transmitting business. (Mem. at 7-8.)

The evidence presented at trial was sufficient for a reasonable jury to find that Mizrahi had the knowledge or specific intent required to satisfy the elements of each count. At trial, Mizrahi's co-conspirators, Joel Zubaid and David Goran, testified in detail about the charged schemes. (Tr. 133-639; Tr. 1020-1198.) Both Zubaid and Goran testified to facts establishing that Mizrahi was aware that the money he was laundering was derived from drug sales. (Tr. 161; Tr. 1050-1052.) Their testimony was corroborated by other evidence, such as communications between Mizrahi and his co-conspirators that included screenshots sent by Zubaid to Mizrahi of his communications with a cartel representative. (*See, e.g.*, GX 197; GX 198.)

Similarly, Zubaid's testimony, which was also supported by documentary evidence, showed that Mizrahi was aware that the money taken from Brownsville was stolen. (Tr 214.) In addition, Mizrahi lied to Bank of America about the source of the funds, claiming that his company had provided hosting services to the senders, providing further evidence of his awareness that the funds were illicitly obtained. (GX 319.)

Zubaid and Goran also testified about Mizrahi's knowing participation in the credit card fraud scheme. Once again, corroborating evidence supported their testimony. For example, Mizrahi received images of credit cards and identification documents that did not belong to him or anyone else involved in the scheme. (*See, e.g.*, GX 995; GX 1001.) He also used that credit card information to charge the credit cards and to create phony invoices in an effort to justify the

3

fraudulent charges.  (GX 1088, 1110, 1118.)  This evidence, together with other corroborating evidence, was also sufficient to establish Mizrahi's guilt on the aggravated identity theft count.

The testimony of Zubaid and Goran, supported by extensive documentary evidence, was sufficient for a reasonable jury conclude that the Mizrahi had the requisite knowledge and intent required to sustain each count.

The trial evidence was also sufficient to support the jury's guilty verdict on the money laundering and unlicensed money transmitting charges.  The evidence established that the money laundered by Mizrahi comprised proceeds of two specified unlawful activities: drug sales and wire fraud.  Zubaid and Goran both testified that the cash they gave Mizrahi to launder consisted of proceeds of narcotics sales.  (Tr. 142; Tr. 1022.)  Again, their testimony was corroborated by the steps the conspirators took to obscure the source of the cash and the threats of violence directed at Mizrahi when the money was stolen.  (*See, e.g.*, GX 703; GX 197; GX 198; GX 1365.)  The second specified unlawful activity, wire fraud, is even more straightforward. Financial records presented at trial traced the fraudulently obtained funds directly from Brownsville to OB Marketing and then to LV Net, Mizrahi's company.  (GX 702 at 6.)  And there was ample evidence permitting the jury to find that Mizrahi *knew* that the piles of cash he was laundering were proceeds of unlawful activity, including his discussions with co-conspirators (Tr. 161, 214, 150-52), emails to Mizrahi with the identities of cartel representatives (GX 197, 198, 224A), his lies to the bank about transfer from OB Marketing (GX 319), and his involvement in financial transactions designed to conceal the nature and source of the unlawful proceeds.

Finally, the evidence was sufficient to support the jury's finding that Mizrahi conspired to operate an unlicensed money transmitting business.  The trial evidence established that Mizrahi,

4

despite being unlicensed, transmitted millions of dollars in cash and wires for Zubaid on behalf of third parties and did so for money. (*See* GX 618, GX 619; Tr. 1932; Tr. 1851.) The evidence also showed that Mizrahi and other conspirators committed multiple overt acts in furtherance of the conspiracy. (*See, e.g.,* GX 703; GX 167, 190, 197, 198 424, 430, 957.)

Because the evidence at trial was sufficient to support the jury's verdict on each count, Mizrahi's motion for judgment of acquittal under Rule 29 is denied.

B.   **Rule 33 Motion**

A motion for a new trial under Rule 33, unlike a motion under Rule 29, does not require the court to view the evidence in the light most favorable to the Government. The Court may weigh the evidence and evaluate the credibility of the witnesses on its own, but it may not "freely substitute [its] assessment of the credibility of witnesses for that of the jury simply because [it] disagrees with the jury." *United States v. Landau*, 155 F.3d 93, 104 (2d Cir. 1998). "[W]here the resolution of the issues depended on assessment of the credibility of the witnesses, it is proper for the court to refrain from setting aside the verdict and granting a new trial." *Id.* at 105. Only if such deference would result in a miscarriage of justice should the Court substitute its assessment of a witness's credibility for that of the jury. *Id.*

Mizrahi urges the Court to order a new trial based on a finding that Zubaid and Goran's testimony was not credible. He asserts that "no [rational] jury could have relied upon such testimony to find proof beyond a reasonable doubt of Mr. Mizrahi's guilt." (Mem. at 8.) He adds that "Zubaid's testimony in particular was so self-serving and inconsistent that this Court could find that his testimony was, in fact, not credible." (*Id.*)

The Court disagrees. The jury in this case was well equipped to evaluate the credibility of Zubaid and Goran, accounting for any benefits derived from their cooperation. Mizrahi provides no reason why the Court should upset the jury's credibility assessment here. Nor is it

clear that the jury relied solely on their testimony in reaching its verdict, because, as noted above, Zubaid's and Goran's testimony was supported by extensive corroborating evidence. Letting the guilty verdict stand would not result in a manifest injustice.

Accordingly, Mizrahi's motion for a new trial under Rule 33 is denied.

### IV.     Conclusion

For the foregoing reasons, Defendant Martin Mizrahi's motion for judgment of acquittal and, in the alternative, for a new trial is denied.

The Clerk of Court is directed to close the motion at ECF Number 139.

SO ORDERED.

Dated: August 15, 2024
       New York, New York

_____
J. PAUL OETKEN
United States District Judge

6